# EXHIBIT G

No. 18726

# The University of the State of New York

## The State Education Department

**Before the Commissioner**

Appeal of JANE and JOHN DOE, on behalf of their child, from action of the Board of Education of the Massapequa Union Free School District regarding access to facilities.

New York Civil Liberties Union Foundation, attorneys for petitioners, Emma Curran Donnelly Hulse, Gabriella Larios, Stefanie D. Coyle, and Bobby Hodgson, Esqs., of counsel

Rigano LLC and Holtzman Vogel Baran Torchinsky & Josefiak PLLC, attorneys for respondent Board of Education of the Massapequa Union Free School District, Nicholas C. Rigano and Susan Greene, Esqs., of counsel

Rigano LLC, attorneys for Board of Education of the Locust Valley Central School District, Nicholas C. Rigano, Esq., of counsel

Petitioners appeal from restrictions imposed by a board policy adopted by the Board of Education of the Massapequa Union Free School District ("Massapequa") concerning the ability of their child (the "student") to access school facilities. In connection therewith, I joined the Board of Education of the Locust Valley Central School District ("Locust Valley"), which passed a materially identical resolution a few weeks later. The appeal must be sustained.

Petitioners are the parents of a transgender student who attends Massapequa's public schools. On September 9, 2025, Massapequa passed a resolution stating that "all students shall be required to use facilities—including restrooms and locker rooms—that correspond with the students' sex as defined under Title IX and federal law."[1] The resolution further provided

[1] "Title IX" refers to Title IX of the Education Amendments of 1972. Title IX prohibits recipients of federal funds, such as school districts, from discriminating against anyone "on

for a designated gender-neutral facility upon a student's request and requires the superintendent to, among other things, revise the district's policies and communications in accordance therewith. On September 18, 2025, Massapequa passed a second resolution directing its superintendent "to enforce and carry out all of the requirements" of the September 9, 2025 resolution. As a result, the student was no longer permitted to use the locker room or restroom that aligned with her gender identity. This appeal ensued. Petitioners' request for interim relief was granted on October 14, 2025.

The next day, Locust Valley passed a materially identical resolution barring transgender students from using bathrooms and locker rooms consistent with their gender identity. Locust Valley's resolution also stated that "[s]tudents shall be permitted to participate in Physical Education and Sports that correspond with the[ir] sex as defined under Title IX and federal law."

On October 27, 2025, I issued an Order to Show Cause directing Locust Valley to demonstrate why it should not be joined as a related party and subject to the interim order issued in the Massapequa appeal. Locust Valley submitted a response on November 3, 2025. On November 12, 2025, I joined Locust Valley as a related party, indicating that it was subject to the stay issued on October 14, 2025.

Petitioners argue that the resolution adopted by Massapequa is arbitrary and capricious because it rests upon an erroneous interpretation of federal law. Petitioners also aver that Massapequa's resolutions prohibiting transgender and gender nonconforming students from using facilities that align with their gender identity are contrary to State law, including the Dignity for All Students Act ("Dignity Act"). Petitioners further contend that Massapequa did not follow its own procedures in adopting the resolutions at issue. For relief, they seek annulment of the September 9 and 18, 2025 resolutions and an order directing Massapequa to allow students to access school facilities, including bathrooms and locker rooms, that align with their gender identity.

Massapequa and Locust Valley (collectively, "respondents") raise a host of procedural defenses. First, respondents argue that the Commissioner lacks jurisdiction over petitioners' claims, which are better suited for resolution by the New York State Division of Human Rights ("DHR"). Next, respondents contend that I must recuse myself due to alleged bias and predetermination of the issues presented herein. Locust Valley specifically argues that it is not a

---

the basis of sex." It also prohibits excluding individuals from participation in, or denying them the benefits of, "any education program or activity receiving Federal financial assistance[.]" 20 USC § 1681.

"related party" and that petitioners have no standing or capacity to bring a claim against it. On the merits, respondents argue that their resolutions are facially neutral and provide for "reasonable accommodations" that do not constitute discrimination under federal or State law. Respondents further aver that the Dignity Act and Gender Expression Nondiscrimination Act ("GENDA") are unconstitutionally vague or inapplicable.[2] In the alternative, respondents claim that federal law preempts petitioners' interpretation of State law.

First, I will address respondents' procedural contentions. Citing the Tax Appeals Tribunal Rules of Practice and Procedure,[3] respondents argue that I should recuse myself based on a September 24, 2025 letter from the State Education Department ("SED") and Office of the Attorney General ("OAG").[4] Putting aside the inapplicability of the cited regulations, SED's prior communication with Massapequa does not require my recusal. I am tasked by statute with "advis[ing] and guid[ing] the school officers of all districts and cities of the state in relation to their duties and the general management of the schools under their control" (Education Law § 305). Therefore, I am obligated, by myself or through SED staff, to provide guidance and opine on the legal obligations of public schools (*see Mahopac Cent. Sch. Dist. v. New York State Educ. Dep't,* 243 AD3d 87, 93-94 [3d Dept 2025]; 8 NYCRR 3.7). Such roles present no basis for a conflict, and respondents have otherwise failed to identify any basis for my recusal. As such, I decline to recuse myself (*see Appeal of A.M.*, 64 Ed Dept Rep, Decision No. 18,573; *Application of McCray, et al.*, 57 *id.*, Decision No. 17,307 [fact that Commissioner and SED were respondents in previous litigation insufficient for recusal]; *Application of Simmons*, 53 *id.*, Decision No. 16,596; *Appeal of Wayne*, 39 *id.* 518, Decision No. 14,298).

Next, Locust Valley asserts that the appeal should be dismissed for petitioners' lack of standing. However, this argument overlooks the Commissioner's broad authority under 8 NYCRR 275.1 to "direct" joinder of a party, especially where joinder is the most efficient method to resolve a common question of law (*Matter of Capobianco v. Ambach,* 112 AD2d 640, 641

---

[2] GENDA, chapter 8 of the Laws of 2019, amended the Human Rights Law to "reaffirm" New York State's commitment "to assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life ...."

[3] 20 NYCRR 3000.8.

[4] Respondents also complain of an email sent from SED's Office of Counsel to an attorney at the New York Civil Liberties Union, the organization that represents petitioners in this appeal. The entirety of the email, sent prior to the commencement of the Massapequa appeal, transmitted the September 24, 2025 letter from the OAG and SED discussed herein with the text "FYI." Forwarding a public document to a stakeholder group in lieu of a formal Freedom of Information Law request reflects governmental transparency, not, as respondents argue, "collusion."

[3d Dept 1985]; *Matter of Educational Alternatives, Inc. v. Mills*, 175 Misc 2d 105, 109 [Sup Ct, Albany County 1997]). The resolutions passed by Massapequa and Locust Valley use nearly identical language in their attempt to modify State human rights protections. The boards enacted these resolutions within a month of each other and hired the same attorney to represent them. To date, SED is unaware of any other school districts that have adopted similar resolutions. Such actions, limited to these two districts, reflect a commonality of purpose and suggest that respondents' efforts were, to some extent, coordinated. Accordingly, joinder of Locust Valley was appropriate to efficiently resolve the common question of law posed by respondents' resolutions in a single decision. I thus decline to dismiss the appeal against Locust Valley for lack of standing.

I also reject respondents' argument that petitioners' claims must be addressed by DHR, the agency tasked with administering the Human Rights Law ("HRL"). "Education Law § 310 (7) authorizes the Commissioner of Education to decide appeals by an aggrieved party on a petition made in consequence of any official act or decision of any officer ... concerning any matter under the Education Law or any act pertaining to common schools" (*Appeal of a Student with a Disability*, 37 Ed Dept Rep 320, Decision No. 13,869). While HRL § 297 allows for the resolution of gender identity discrimination claims via administrative complaint or private cause of action, this appeal does not involve adjudication of disputed facts or specialized expertise; it calls only for interpretation of the plain language of portions of the Executive Law and Dignity Act.[5] As such, it is distinguishable from prior appeals where the Commissioner declined to adjudicate claims of employment discrimination (*e.g. Appeal of Hudson and Moss*, 61 Ed Dept Rep, Decision No. 18,110; *Application of Doe*, 61 *id.*, Decision No. 18,052; *Appeal of Nicholaou-Guirguis*, 32 *id.* 439, Decision No. 12,879). Additionally, there is nothing in HRL § 297 mandating that petitioners exhaust their claims under HRL's framework before (or instead of) seeking relief under Education Law § 310. Therefore, I conclude that petitioners are not precluded from seeking relief in an appeal to the Commissioner.

Respondents' Title IX preemption arguments are also without merit. While it is true that an appeal to the Commissioner pursuant to Education Law § 310 is not an appropriate forum to adjudicate claims under Title IX (*Appeal of Brockway*, 62 Ed Dept Rep, Decision No. 18,218; *Appeal of J.H. and R.H.*, 57 *id.*, Decision No. 17,317; *Appeal of A.G.*, 56 *id.*, Decision No. 17,084), petitioners make no such claims. Indeed, petitioners only refer to Title IX to

---

[5] The Commissioner has issued decisions interpreting provisions of State law other than the Education Law. *See Appeal of R.L.*, 65 Ed Dept Rep, Decision No. 18,635 (Public Health Law); *Appeal of Crisorio, et al.*, 63 *id.*, Decision No. 18,405 (General Municipal Law); *Appeal of Romano*, 62 *id.*, Decision No. 18,255 (Real Property Tax Law).

rebut respondents' reliance on the statute as a justification for enacting the challenged resolutions. Additionally, there is nothing in Title IX, its implementing regulations, or the executive orders relied on by respondents that conflicts with the State laws that are within my purview to enforce. Contrary to respondents' assertions, neither Title IX nor its implementing regulations define "sex" (20 USC § 1681 *et seq.*).[6] Nor do these federal laws mandate sex segregated facilities (34 CFR 106 [2020]).[7] Further, Executive Orders 14190 and 14201 do not affect the rights of transgender students and individuals in New York's public schools.[8] As such, no federal law, including Title IX and its implementing regulations, conflicts or excuses noncompliance with the HRL, GENDA, or the Dignity Act. Therefore, I need not address constitutional issues under the Supremacy Clause or the Due Process Clause.

Having disposed of respondent's procedural objections, I will proceed to the merits. School board resolutions inconsistent with State law or regulations are *per se* arbitrary or capricious (*see Appeal of A.M.*, 64 Ed Dept Rep, Decision No. 18,573 [sustaining appeal where district did not comply with State law and regulations requiring services to English Language Learners and adequate facilities]; *Appeal of Doyle*, 52 *id.*, Decision No. 16,429 [district's deviation from State regulation by "fail[ing] to provide [a] required half unit of health education for its current eighth grade class" deemed contrary to law]).

In an appeal to the Commissioner, a petitioner has the burden of demonstrating a clear legal right to the relief requested and establishing the facts upon which he or she seeks relief (8 NYCRR 275.10; *Appeal of P.C. and K.C.*, 57 Ed Dept Rep, Decision No. 17,337; *Appeal of Aversa*, 48 *id.* 523, Decision No. 15,936; *Appeal of Hansen*, 48 *id.* 354, Decision No. 15,884).

Initially, Massapequa acted arbitrarily when it disregarded its own procedure for amending board policy. Massapequa board policy 2410 tasks its "[s]uperintendent or ... designee" with "preparing a written draft of all proposed policies." The policy further provides that "[o]nce a proposed policy has been drafted, it shall be placed on the Board's agenda for a first reading,

---

[6] Indeed, the United States Department of Education's Title IX Final Rule explains: "The Department declines to take commenters' suggestions to include a definition of the word 'sex' in these final regulations...." (Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed Reg 30, 178 [May 19, 2020]).

[7] "A recipient *may* provide separate toilet, locker room, and shower facilities on the basis of sex, but such facilities provided for students of one sex shall be comparable to such facilities provided for students of the other sex" (34 CFR 106.33 [emphasis added]).

[8] "As previously observed by the State Education Department, ... presidential statements of policy" such as this "are legally ineffective." OAG & SED, *Joint Statement of the Office of the Attorney General and the State Education Department Regarding Transgender Students' Rights* (Feb. 5, 2025). *See also Female Athletes United v. Ellison*, No. 25-2899 (8th Cir 2026) (federal "executive guidance and agency findings, in and of themselves, do not reflect settled law").

giving all persons interested in it an opportunity to express their views." There is no evidence that Massapequa followed this process; both resolutions appeared without advance notice during regular meetings of the board.

Massapequa argues that "[t]he September 9, 2025 [r]esolution d[id] not constitute a change in 'policy' but instead affirmed the District's pre-existing policy." Such sophistry is unpersuasive, particularly where board policy 2410 is entitled "Adoption *and Amendment* of Policies" (emphasis added). The haste and irrationality of the board's actions are further illustrated by the fact that Massapequa did not amend board policy 0100, which affirms Massapequa's commitment to the rights of transgender students and adults. Because Massapequa adopted its September 9 and 18, 2025 resolutions without providing district residents an opportunity to express their views, these resolutions must be annulled for failure to comply with its own process (*Appeal of Pollicino, et al.*, 48 Ed Dept Rep 279, Decision No. 15,858).

Additionally, the resolutions of Massapequa and Locust Valley challenged herein must be annulled as inconsistent with State law. The HRL, as amended by GENDA, expressly prohibits educational institutions such as respondents' schools from discriminating against students based on their actual or perceived sex and gender identity or expression (*see* Executive Law §§ 292 [35] [defining "gender identity or expression"], 296 [4] [requirements for educational institutions]; 9 NYCRR 466.13 ["Discrimination on the basis of gender identity or expression is also sex discrimination."]).[9] The Dignity Act similarly prohibits discrimination against students for their actual or perceived gender, which is defined as "a person's actual or perceived sex and includes a person's gender identity or expression" (Education Law §§ 11 [6], 12). Dignity Act violations include "the denial of access to school facilities" such as "restrooms, changing rooms, [and] locker rooms" based on a person's actual or perceived "gender," "which includes gender identity and/or expression" (8 NYCRR 100.2 [kk] [1] [xi]).[10] These civil rights protections are embodied in the New York State Constitution (N.Y. Const. Art. I, § XI).

At issue are school board policies that operate solely on the basis of birth sex by excluding transgender girls from girls' facilities and excluding transgender boys from boys' facilities. For example, a non-transgender student

---

[9] Respondents' reliance on *Hispanic AIDS Forum v. Estate of Bruno* (16 AD3d 294 [1st Dept 2005]) is mistaken for two principal reasons. First, petitioners bring claims under the Dignity Act and do not seek adjudication of an HRL claim as opposed to enforcement of its plain language. Second, this decision interprets a prior iteration of the HRL that has been abrogated by GENDA. I therefore find *Bruno* inapposite to the present appeal.

[10] I decline respondents' request to declare GENDA or the Dignity Act unconstitutionally vague. "The Commissioner of Education will not pass upon questions of the constitutionality of a statute in a proceeding pursuant to Education Law § 310" (*Matter of Wilson*, 15 Ed Dept Rep 34, Decision No. 9,063).

whose birth sex is female can use the girls' bathrooms and locker rooms but a transgender female student whose birth sex is male cannot. That result is inconsistent with New York State law, which prohibits public schools from treating students differently based on their gender identity (*see e.g.* Education Law § 12 [1]; 8 NYCRR 100.2 [kk] [1] [xi] [a]).[11]

Respondents sidestep this point by arguing that they provide "reasonable accommodations to transgender individuals" in the form of gender-neutral bathrooms. The pertinent provisions of the HRL and Dignity Act do not contemplate a "reasonable accommodation" exception. While students may elect to use gender-neutral facilities, no student may be compelled to do so because of their gender identity. Therefore, the offering of such facilities does not excuse respondents' discriminatory resolutions.

In light of the foregoing, I find that petitioners have met their burden of proving that respondents' resolutions are contrary to law and, therefore, arbitrary and capricious. I reject respondents' baseless claim that their resolutions "do[] not 'target people for discrimination.'" Upon learning of Massapequa's policy, petitioners' child "immediately started crying" and "quickly began feeling suicidal." She also reports that her "anxiety and depression have worsened since learning about the policy ...."[12] These were the predictable results of Massapequa's actions, which targeted a discrete group of people who have become increasingly vilified by irresponsible adults.

More broadly, respondents' actions reflect a misunderstanding of their role within New York State's constitutional structure. "[M]unicipal corporate bodies—counties, towns and school districts [like Massapequa and Locust Valley]—are ... subdivisions of the State, created by the State for the convenient carrying out of the State's governmental powers and responsibilities as its agents" (*Massapequa Union Free Sch. Dist. v New York State Bd. of Regents*, 809 F Supp 3d 33, 63 [ED NY 2025]). Board members are "public officers who 'take [] an oath of office to uphold the law and faithfully discharge [their] duties'" (*Appeal of Brenner and Buckley*, 64 Ed Dept Rep, Decision No. 18,501, *quoting Appeal of Nett and Raby*, 45 *id.* 259, Decision No. 15,315). Respondents' conduct—disregarding State law to deprive students of the dignity to which they are entitled—did not satisfy these obligations.

I have considered respondents' remaining arguments and find them to be without merit.

---

[11] These same principles govern physical education and athletics. *See* Education Law § 3201-a. As such, Locust Valley must adjust its policy to conform with the provisions of the HRL and Education Law that safeguard the rights of transgender students at school, including athletics.
[12] I commend petitioners and the student for their courage in bringing this appeal.

THE APPEAL IS SUSTAINED.

IT IS ORDERED that the resolutions discussed herein adopted by the Massapequa Board of Education on September 9 and 18, 2025 and by the Locust Valley Board of Education on October 15, 2025 are hereby annulled; and

IT IS FURTHER ORDERED that respondents allow all students to access the school facilities, including bathrooms and locker rooms, that most closely align with their gender identity.

IN WITNESS WHEREOF, I, Betty A. Rosa, Commissioner of Education of the State of New York, for and on behalf of the State Education Department, do hereunto set my hand and affix the seal of the State Education Department, at the City of Albany, this 20th day of April 2026.

Commissioner of Education