# **EXHIBIT H**

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*Civil Division*
*Federal Programs Branch*

August 20, 2026

<u>By E-mail</u>

Nicholas C. Rigano
Rigano LLC
534 Broad Hollow Road
Suite 100
Melville, NY 11747
nrigano@riganollc.com

Susan L. Greene
Holtzman Vogel Baran Torchinsky & Josefiak PLLC
1325 Avenue of the Americas
New York, NY 10019
sgreene@holtzmanvogel.com

Andrew Episkopos
Holtzman Vogel Baran Torchinsky & Josefiak PLLC
2300 N Street NW, Suite 643
Washington, DC 20037
aepiskopos@holtzmanvogel.com

Re: *Massapequa Union Free School District v. Rosa,* No. 25-CV-05892 (E.D.N.Y.)
*Locust Valley Central School District v. Rosa,* No. 25-CV-06937 (E.D.N.Y.)

Dear Counsel:

We write to request that you voluntarily dismiss the Federal Defendants from the cases *Massapequa Union Free School District v. Rosa,* No. 25-CV-05892 (E.D.N.Y.) and *Locust Valley Central School District v. Rosa,* No. 25-CV-06937 (E.D.N.Y.). We have not investigated or assessed whether New York Education Law § 12, New York Executive Law § 296(4), or "Proposition One," as set forth in Article I, § XI of the New York Constitution violate Title IX, 20 U.S.C. § 1681 *et seq.*, on their face or as applied in any particular context. The Complaints' allegations, however, indicate that the interests of Plaintiffs and the United States (including the named Federal Defendants) are not adverse. Article III limits the judiciary to deciding actual "Cases" or "Controversies," U.S. Const. art. III, § 2, which requires that the parties have "adverse legal interests." *E.g.*, *Kellogg v. Nichols*, 170 F.4th 20, 26 (2d Cir. 2026); *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011); *Ayestas v. Davis*, 584 U.S. 28, 40 (2018) ("It is certainly true that cases and controversies in our legal system are adversarial in nature." (citations omitted)).

The United States' recent Title IX court enforcement actions regarding boys in girls' sports and boys in girls' intimate spaces (such as locker rooms and bathrooms) show that the United

States does not appear to be adverse to your clients' legal positions as alleged in the Complaints. *See generally* Compl., *United States v. Maine Dep't of Educ.*, No. 25cv173 (D. Me. April 16, 2025); Compl., *United States v. Cal. Interscholastic Federation*, No. 8:25cv1485, (C.D. Cal. July 9, 2025), ECF No. 1; Compl., *United States v. Minnesota Dep't of Educ.*, No. 26cv2078 (D. Minn. March 30, 2026), ECF No. 1; *see also, e.g.,* U.S. Br. Opp'n to Mot. to Dismiss at 2-15, *Cal. Interscholastic Federation*, ECF No. 27; Defs.' Reply Br. Mot. to Dismiss at 11-17, *Minnesota v. Trump*, No. 25cv1608 (D. Minn. March 12, 2026), ECF No. 68. These enforcement actions are consistent with the Supreme Court's recent decision in *W. Virginia v. B. P. J.*, No. 24–38, 2026 WL 1868739 (U.S. June 30, 2026).

To summarize the United States' legal position in the above-referenced Title IX enforcement actions, Title IX's use of the term "sex" means biological sex, and it does not include or extend to gender identity. As the United States has relayed in these actions, when Congress passed Title IX in 1972, contemporaneous dictionaries defined "sex" as what the term has always meant: biological sex. *See Adams v. Sch. Bd. Of St. Johns County*, 57 F.4th 791, 812-13 (11th Cir. 2022). And they relay that Title IX's statutory text uses the term consistent with biological sex, referring to a binary classification based on biological differences. *See, e.g.*, 20 U.S.C. § 1681(a)(8) (referring to "one sex" and then "other sex"); *id.* § 1681(a)(2) (referring to "one sex" and then "both sexes").

Title IX also carries the "normal definition of discrimination," *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005), which is treating individuals or groups that "are similarly situated differently without sufficient justification for the difference in treatment," *Ala. Dep't of Revenue v. CSX Transp., Inc.*, 575 U.S. 21, 26 (2015). Discrimination means "treating [an] individual worse than others who are similarly situated." *Bostock v. Clayton County*, 590 U.S. 644, 657 (2020). Title IX thus prohibits the intentional use of sex that subjects members of one sex to worse treatment than similarly situated members of the other sex. *Jackson*, 544 U.S. at 174.

In the actions above, the United States has relayed that, because of boys' inherent biological advantage in athletics, the sexes are not similarly situated, and intentionally separating by sex is thus not "discrimination" prohibited by Title IX when such separation does not treat either sex worse. When that intentional separation *does* treat one sex worse, the separation is discriminatory. The briefing goes on to relay that for educational programs that allow boys in girls' sports, the program cannot intentionally separate based on sex and then provide an exception for some boys that harms girls. Such briefing concludes that allowing boys, including trans-identifying boys, to participate in athletics designated for girls harms girls and accordingly violates Title IX. *See, e.g.,* U.S. Br. Opp'n to Mot. to Dismiss at 2-15, *Cal. Interscholastic Federation*; Defs.' Reply Br. Mot. to Dismiss at 11-17, *Minnesota.*

The United States has relayed the same points in an enforcement action concerning intimate spaces; if the educational program separates these spaces by sex, that separation cannot harm either sex. *See, e.g., Minnesota Dep't of Educ.*, Compl. ¶¶ 50-53, 80, 103. That action relays that when the educational program intentionally uses sex to designate some of those spaces exclusively for girls, Title IX prevents the educational program from then providing an exception for some boys that harms girls. It also relays that the harmful exception breaks the original justification for the intentional use of sex, and that intentional split is now discriminatory. And it relays that allowing boys, including trans-identifying boys, to enter intimate spaces designated for girls harms girls and accordingly violates Title IX. *See id.*

Pursuant to the Supremacy Clause, U.S. Const. Art. VI, Cl. 2, for educational programs that accept federal funding, Title IX would preempt any state or local law or regulation that directly conflicts with Title IX. *See, e.g.*, *Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 95-99 (2017); *Dalton v. Little Rock Family Planning Services*, 516 U.S. 474, 476 (1996); *Bennett v. Arkansas*, 485 U.S. 395, 396 (1988); *Lawrence County v. Lead-Deadwood Sch. Dist. No. 40-1*, 469 U.S. 256, 260-61 (1985); *Townsend v. Swank*, 404 U.S. 282, 286 (1971).

The summary above of the United States' legal position in recent Title IX court enforcement actions illustrates that plaintiffs' interests and those of the United States do not appear to be adverse. There is no case or controversy between plaintiffs and the Federal Defendants for the judiciary to decide. We accordingly encourage you to voluntarily dismiss the United States Department of Education and the Honorable Linda E. McMahon, Secretary of the Department of Education, as Defendants in both cases.

Very truly yours,

JOSEPH NOCELLA, JR.
United States Attorney

By: *__/s/ Michael S. Blume__*
Michael S. Blume
Assistant U.S. Attorney

U.S. Department of Justice
Civil Division
Federal Programs Branch

By: *__/s/ Michelle R. Bennett__*
Michelle R. Bennett
Assistant Branch Director