# EXHIBIT J

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

MASSAPEQUA UNION FREE SCHOOL DISTRICT, MASSAPEQUA UNION FREE SCHOOL DISTRICT BOARD OF EDUCATION,

Plaintiffs,

-against-

BETTY A. ROSA, in her official capacity as Commissioner of Education, DENISE M. MIRANDA, in her official capacity as Commissioner of the New York State Division of Human Rights, LETITIA A. JAMES, in her official capacity as Attorney General of the State of New York, and JANE DOE and JOHN DOE on behalf of their minor daughter JANIE DOE, UNITED STATES DEPARTMENT OF EDUCATION, LINDA E. MCMAHON in her official capacity as United States Secretary of Education,

Defendants.

-----------------------------------------------------------------X

**SUPPLEMENTAL AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Case No.: 25-5892

***Jury Trial Demanded***

Plaintiffs, Massapequa Union Free School District ("District"), Massapequa Union Free School District Board of Education ("Board") bring this action for declaratory and injunctive relief and allege as follows:

**NATURE OF THE PROCEEDING**

1. Plaintiffs are the governing bodies responsible for setting policies for public school students in the District. They bring this action for declaratory and injunctive relief because they are under threat of enforcement actions by the federal government and the state government regardless of how they implement policies with respect to separation of males and females in intimate spaces, including bathrooms and locker rooms and because Defendant Commissioner

Betty A. Rosa has imposed an order requiring Plaintiffs to permit biological males to enter intimate spaces with biological females.

2. Since the summer of 2025, the United States Department of Education ("USDOE"), a cabinet agency within the executive branch of the United States government, has engaged in numerous enforcement actions against school districts throughout the country, including in New York, for permitting students to use intimate spaces in accordance with their gender identity instead of their biological sex.[1] USDOE grounded its actions in the text of Title IX of the Education Amendments of 1972 ("Title IX"), its implementing regulations, recent court decisions, the President's Executive Orders, and guidance from the United States Department of Justice ("DOJ"). USDOE's enforcement actions are either pending or have already resulted in penalties including the withholding of federal funding. To date, it is Plaintiffs' understanding that every concluded

[1] These enforcement actions primarily focus on violations of Title IX, particularly concerning transgender students' access to bathrooms, locker rooms, and participation in sports consistent with their gender identity rather than biological sex. Those enforcement actions include the following:

- Denver Public Schools (CO): on August 28, 2025, USDOE investigated and found the schools in violation of Title IX for establishing all-gender restrooms and allowing students to use bathrooms aligned with their gender identity. USDOE required the district to revert to single-sex facilities or face enforcement action. This action followed the transformation of a girls' restroom into an all-gender facility at a high school.
- Kansas School Districts: on August 14, 2025, USDOE confirmed that Topeka, Shawnee, Olathe, and Kansas City school districts are under investigation for policies permitting students to use sports and intimate facilities based on gender identity. The Board, upon information and belief, has the understanding that this investigation/enforcement action remains pending.
- Northern Virginia School Districts: on July 25, 2025, USDOE found that five districts (Alexandria City, Arlington, Fairfax County, Loudoun County, and Prince William County Public Schools) violated Title IX by allowing transgender students to access restrooms and facilities matching their gender identity. USDOE gave these districts 10 days to comply or face enforcement actions. They did not. As a result, the USDOE designated them "high-risk" grantees, resulting in the imposition of funding restrictions on them.
- Saratoga Springs City School District (NY): on May 6, 2025, USDOE launched an investigation into the school district for allowing biological boys to play girls' sports and use girls' locker rooms for Title IX violations. The Board, to the best of its knowledge, believes that this investigation/enforcement action remains pending
- New York City School System. USDOE threatened to withhold funding from the school system because of its bathroom policies. The Board understands this investigation/enforcement action remains pending. This month, New York city sued USDOE to prevent enforcement.

enforcement action by USDOE has resulted in the imposition of penalties.

3. Plaintiffs must comply with Title IX, as they accept federal funding.

4. After commencement of the school year on September 2, 2025 and learning of federal enforcement actions against other school districts, Plaintiffs passed two resolutions: (i) providing students access to restrooms and locker rooms that correspond to the student's "sex" as defined under Title IX (the "September 9 Resolution"), and (ii) directing the Superintendent of Schools of the District to carry out the September 9 resolution (the "September 18 Resolution" and collectively with the September 9 Resolution, the "Resolutions" or the "Policy").

5. The Resolutions establish a facially neutral policy requiring all students to use school restrooms and locker rooms corresponding to their biological sex, while also providing all students access to gender-neutral facilities.

6. This policy complies with federal law, including Title IX, recent federal court decisions interpreting "sex" to mean biological sex (*e.g.*, *Dep't of Educ. v. Louisiana,* 603 U.S. 866 (2024); *Tennessee v. Cardona*, 737 F. Supp. 3d 510, 522 (E.D. Ky. 2024); *Kansas v. Dep't of Educ.*, 739 F. Supp. 3d 902, 923 (D. Kan. 2024)), and Executive Order 14168.

7. The facially neutral Resolutions also comply with state law, as they apply equally to all students regardless of gender identity or transgender status. Under New York State Appellate Division precedent, this across-the-board biological-sex-based policy does not constitute discrimination. *See Hispanic AIDS Forum v. Bruno*, 16 A.D.3d 294 (N.Y. App. Div. 1st Dept 2005). Accordingly, under *Bruno*, the following do not apply because there is no discrimination: New York Education Law § 12 ("DASA"), New York Executive Law § 296(4) ("GENDA"), and "Proposition One," set forth in Article I, § 11 of the New York Constitution. Those laws do not apply to intimate spaces, and no court has ever applied those statutes in that manner.

8. New York State Education Department ("NYSED") and its Commissioner, Defendant Rosa, maintain that the Policy violates state law. They said so in a September 24, 2025, letter to Plaintiffs, maintaining that the Resolutions "violate[d] state laws," that "[t]here is no federal law to the contrary", and that "enforcement actions may result." Neither NYSED nor Commissioner Rosa have cited any case supporting their position; instead, they rely on vague statutory text in DASA, GENDA and Proposition One, none of which has ever been interpreted by a court to be consistent with their position to Plaintiffs' knowledge.

9. Further on or about October 3, 2025, Jane and John Doe, on behalf of their minor transgender daughter Janie Doe (together, the "Does"), filed a petition with Commissioner Rosa ("Doe Petition") under section 310 of the New York State Education Law (the "Doe Proceeding"). In that administrative proceeding, the Does claimed that the Resolutions are discriminatory under state law—namely, DASA and GENDA.

10. Despite having pre-determined the resolution of the Doe Petition, as set forth in the September 24, 2025 letter, and having repeatedly determined in other actions that she has no jurisdiction to hear "novel constitutional issues," Commissioner Rosa sustained the appeal in the Doe Proceeding, annulling the Resolutions and ordering the District to "allow all students to access the school facilities, including bathrooms and locker rooms, that most closely align with their gender identity." Consequently, Commissioner Rosa has usurped the Board's authority to establish policy and forced Plaintiffs to allow biological males to enter intimate spaces with biological females to the detriment of its students and in contravention of the law.

11. Commissioner Rosa's ruling puts Plaintiffs in an impossible position. Plaintiffs must either: (i) violate the Commissioner's stay to comply with Title IX and subject themselves to enforcement action by New York State, or (ii) violate Title IX to comply with the Commissioner's

stay and subject themselves to enforcement by USDOE and DOJ.

12. Meanwhile, students face intolerable harms as they are forced to use the bathroom or undress in the presence of members of the opposite sex. Students have to worry that they will face harassment, invasions of privacy, or affronts to their dignity any time they enter the bathroom. And those students and their parents have no way to redress their harms through the ordinary process with a now powerless school board.

13. Accordingly, Plaintiffs seek, *inter alia*, a declaratory judgment and related injunctive relief: (i) that Plaintiffs' Resolutions comply with and do not constitute a violation under Title IX, and (ii) that Title IX preempts New York's antidiscrimination laws to the extent the Court finds that those laws are in conflict.

14. Additionally, Plaintiffs seek an injunction enjoining Commissioner Rosa and Commissioner Miranda from enforcing their interpretation of state law and the final order against the District.

15. Plaintiffs do not seek money damages against any Defendant.

**JURISDICTION AND VENUE**

16. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as a federal question is involved in the parties' dispute, including Title IX and the Declaratory Judgment Act 28 U.S.C. §§ 2201–02.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (e)(1). A substantial part of the events or omissions giving rise to this Complaint occurred and continues to occur within the Eastern District of New York.

**PARTIES**

18. Plaintiff Massapequa Union Free School District is a K-12 public school district

located in Massapequa, New York that currently serves approximately 6,564 students in nine schools. District administrative offices are located at 4925 Merrick Road, Massapequa, New York 11758.

19. Plaintiff Massapequa Union Free School District Board of Education is the duly elected governing body of the District. The Board is comprised of five residents of the community who serve three-year terms as representatives in all matters concerning the District.

20. Defendant Betty A. Rosa is the Commissioner of the New York State Education Department, an agency of the State of New York, and is the President of the University of the State of New York. The Commissioner presided over the Doe Proceeding and issued the final order on April 20, 2026. She is sued in her official capacity.

21. Defendant the Attorney General of the State of New York (the "Attorney General") is the head of the New York State Department of Law. See N.Y. Const. art. V, § 4, N.Y. Exec. Law § 60. The Attorney General investigates and prosecutes claims of education-related discrimination under state, federal, and local law as well as other civil rights related claims and has a dedicated division titled the Division of Social Justice that engages in civil rights enforcement through its Civil Rights Bureau. Letitia A. James is the current Attorney General of the State of New York. She is sued here in her official capacity only.

22. Defendant Denise M. Miranda is the Commissioner of the New York State Division of Human Rights, an agency of the State of New York in charge of, *inter alia*, enforcing civil rights violations under the New York State Human Rights Law, which includes GENDA. She is sued in her official capacity (together with Betty Rosa and Letitia James, "State Defendants").

23. State Defendants are named in this action because they have taken the position that New York State law imposes requirements on Plaintiffs that may be contrary to the proper

interpretation of state and federal law.

24. Defendants John Doe and Jane Doe are the parents of Janie Doe, a transgender student in the District. Defendants John Doe and Jane Doe commenced the Doe Proceeding on behalf of Janie Doe. The Does live in the District. Janie Doe is in 10th grade and, for the 2026-2027 school year, will be attending the District's Massapequa High School – Main Campus ("Main Campus"), a high school with gender neutral bathrooms located throughout the building. Janie Doe previously attended the District's Massapequa High School – Ames Campus ("Ames Campus"), a small single grade school with gender neutral bathrooms located throughout the building and a gender-neutral locker room located immediately next to the gymnasium.

25. Defendant United States Department of Education is a Cabinet-level federal agency in charge of, *inter alia*, regulating and enforcing federal law, including but not limited to Title IX, and federal funding requirements in the field of education.

26. Defendant Linda E. McMahon is the United States Secretary of Education and official in charge of the USDOE.

## FACTS AND PROCEDURAL HISTORY UNDERLYING THIS PROCEEDING

### A. Massapequa Board Promulgates The September 9, 2025 Resolution

27. Beginning in the summer of 2025, USDOE commenced numerous enforcement actions against public school districts throughout the country, including in New York, for allowing students to use bathrooms and locker rooms in accordance with their gender identity; USDOE maintains that allowing such use violates Title IX. *See infra*.

28. After learning of those enforcement actions, and immediately after the commencement of the school year, Plaintiffs engaged in a process to ensure their policies comply with all laws, including Title IX, to avoid any enforcement action by the federal government.

29. On September 9, 2025, the Board adopted a resolution stating, in pertinent part, as follows:

> BE IT RESOLVED that the policy of the Massapequa Board of Education mandates that all students shall be required to use facilities-including restrooms and locker rooms-that correspond with the students' sex as defined under Title IX and federal law.
>
> BE IT FURTHER RESOLVED that any student who requests an alternative arrangement shall be provided access to a designated gender-neutral facility, but shall not be permitted to use facilities designated for the opposite sex; and
>
> BE IT FURTHER RESOLVED that the Superintendent of Schools is hereby directed to revise district policies, procedures, and communications to reflect full compliance with Title IX and federal law; to provide appropriate staff training; and to ensure transparency in how the policy will be implemented and enforced.

30. The text of the September 9 Resolution set forth the partial legal basis for its adoption, citing: (i) Title IX, which "prohibits discrimination based on sex in education programs and activities that receive federal financial assistance," (ii) *Tennessee v. Cardona*, 737 F. Supp. 3d 510 (E.D. Ky. 2024); *Kansas v. Dep't of Educ.*, 739 F. Supp. 3d 902 (D. Kan. 2024), and (iii) Executive Order 14168 titled *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*. Each of those sources confirms that "sex" under Title IX means "biological sex" and not "gender identity."

31. As a result of USDOE's recent enforcement actions against other school districts, Plaintiffs—seeking to ensure compliance with Title IX and Executive Order 14168 and not risk statutory liability; the loss of federal funding; or exposure to a federal enforcement action—determined that a clarification of policy was prudent and necessary.

32. Plaintiffs adopted the Resolutions with the purpose of implementing a facially neutral policy in compliance with all law and ensuring that reasonable accommodations, including

access to gender-neutral facilities, would be available to all students of the District so that all students' needs, privacy and safety would be respectfully addressed.

33. Plaintiffs took measures to ensure that its schools have gender-neutral facilities available for any student.

**B. The Board of Education's September 18, 2025 Resolution**

34. On September 18, 2025, the Board passed a subsequent resolution that provides:

> Whereas on September 9, 2025 the Board of Education passed a resolution establishing that the policy of the Massapequa Board of Education mandates that all students shall be required to use facilities including restrooms and locker rooms that corresponds with the students' sex as defined under Title IX and federal law.
>
> Now, Therefore, Be it Resolved, that the Board of Education hereby directs the Superintendent of Schools to enforce and carry out all of the requirements of the Board of Education's above referenced resolution of September 9, 2025.

**C. The Resolutions Are Facially Neutral**

35. The September 9 Resolution is facially neutral. It does not target transgender students or otherwise burden students because of their gender identity. Every student—regardless of gender identity or transgender status—is forbidden from using an intimate facility that diverges from their biological sex but is able to use any gender-neutral facility. Under the plain terms of the September 9 Resolution, all biological boys (whether transgender or not) are forbidden from entering the girls' locker room and all biological girls (whether transgender or not) are forbidden from entering the boys' locker room.

36. The September 9 Resolution does not burden transgender individuals any more than it does non-transgender students. Everyone within the District may use the gender-neutral facilities, regardless of biological sex or gender identity. And every student who wishes to use

intimate facilities with those that share their biological sex can do so whether they are transgender or not.

37. Further, the September 9 Resolution does not harm *all* transgender individuals as it would be improper to assume that all transgender students want to use intimate facilities designated for those of a different biological sex than their own. Thus, the Resolution may only affect a subset of transgender individuals.

38. To the extent any Defendant claims that Plaintiffs have animus toward Janie Doe, any other child or the transgender community, there is no evidence of the same, nor was any presented to the State Defendants.

**D. The Commissioner's September 24, 2025 Letter**

39. On September 24, 2025, Mr. Daniel Morton-Bentley, Counsel and Deputy Commissioner for NYSED and Matthew Faiella, Special Counsel for LGBTQIA+ Rights Civil Rights Bureau for the Office of the New York State Attorney General sent a joint letter on the Commissioner's letterhead to the President of the District. That letter reveals that the Commissioner had already decided that the District "violate[d] state laws," that "[t]here is no federal law to the contrary" and that "enforcement actions may result." That letter mischaracterized the Resolutions, misstated factual events, and offered a misleading presentation of relevant law. The letter states, in pertinent part:

> On September 9, 2025, the board adopted a resolution announcing its intention to restrict the rights of transgender students (and, presumably, adults) to utilize school facilities in accordance with their gender identity. The resolution repeatedly invokes Executive Order 14168, issued on January 20, 2025.
>
> On September 18, 2025, the board held an executive session, ultimately issuing a directive calling on the superintendent to enforce the board's policy. We have become aware that on September 22, 2025, a school security guard identified and singled out a student who is transgender,

> ordering the student to no longer use facilities consistent with the student's gender identity. As far as we are aware, that one student is the only transgender student in the district who had used facilities consistent with their gender identity.
>
> As you are aware, following various Executive Orders, the State Department of Education and the Office of the Attorney General issued a joint statement on the rights of transgender students in February 2025.[] That statement explains that New York State law protects transgender individuals, including students, from discriminatory treatment. There is no federal law to the contrary. The Executive Order referenced in the board's resolution does not impose new obligations on states or school districts—and certainly does not require them to violate state laws prohibiting discrimination
>
> Our offices have been, and continue to, implement the Legislature's imperative that New York be a State free from discrimination on the basis of gender identity and expression.[] Should the board adopt and implement a resolution that is inconsistent with state law, please be aware that enforcement actions may result.

40. The letter cites no statute, judicial decision, or other source of law. It only cites the Attorney General's and the Commissioner's own Joint Statement made in February 2025 which did not even reference Executive Order 14168, the pertinent Executive Order.

**E. The Defendant Commissioner's Pre-Determined Factual and Legal Determinations Set Forth In The September 24, 2025 Letter**

41. The factual findings set forth in Commissioner Rosa's September 24, 2025 letter are one-sided, biased, and adversarial. The facts are incorrect, and the conclusions are drawn without any semblance of due process. Commissioner Rosa did not disclose the source of her facts contained in the letter or otherwise ask for Plaintiffs' position.

42. For example, contrary to the allegations in the Defendant Commissioner's letter, the Board did not "adopt[] a resolution announcing its intention to restrict the rights of transgender students." The September 9, Resolution is facially neutral as it states: "all students shall be required to use facilities-including restrooms and locker rooms-that correspond with the students' sex as defined under Title IX and federal law." It does not target or otherwise refer to transgender

students and its prohibition on access to facilities applies equally to transgender and non-transgender individuals.

43. Nowhere in the text of the September 9 Resolution is the word "transgender" used and certainly the Board did not "announce its intention" to discriminate, contrary to the statement in the September 24, 2025 letter.

**F. The Does' Petition Challenging The Resolutions and Coordination with the Commissioner**

44. The Ames Campus building contains a locker room for males, a locker room for females, and a non-gendered locker room, all of which are utilized by students to change for physical education classes and athletic practices and competitions.

45. Likewise, the Ames Campus building contains bathroom facilities throughout the building, designated as follows: male, female, and non-gendered.

46. The Main Campus building contains a locker room for males and a locker room for females, both of which are utilized by students to change for physical education classes and athletic practices and competitions.

47. The Main Campus building contains bathroom facilities throughout the building, designated as follows: male, female, and non-gendered.

48. According to the Doe Petition, Janie Doe is a male by birth, who, in the last year has revealed to her parents and others that she identifies as a female.

49. After passage of the Resolutions, on September 22, 2025, Janie Doe attempted to use the female locker room in the Ames Campus building prior to her physical education period, even though Janie Doe received notice that such locker room use was not available due to Janie Doe's biological sex as a male.

50. Janie Doe was reminded that a non-gendered locker room was available for use if

Janie Doe preferred such a space instead of the male locker room.

51. On October 3, 2025, the Does, through the New York Civil Liberties Union ("NYCLU"), filed the Doe Petition and commenced the Doe Proceeding. The Does requested an interim stay of enforcement of the Resolutions pending the outcome of the Doe Proceeding.

52. Nine days prior, Daniel Morton-Bentley, counsel for the NYSED, immediately after sending the September 24, 2025 letter to the District, forwarded that letter in an email to Johanna Miller, a member of the NYCLU, the organization representing the Does in their petition with "FYI" in the body of that email.

53. According to NYCLU's website, Johanna Miller is on NYCLU's leadership team and is the "Chief of Special Initiatives & Education Policy Center Director" for the NYCLU.

54. Upon information and belief, the Doe Petition was a coordinated effort between the NYSED and the NYCLU to impose their agenda against the Board and District without a fair adjudication. The Commissioner, through her staff, appears to have orchestrated the entire Doe Proceeding and thereafter adjudicated the matter as a self-proclaimed neutral arbiter refusing to recuse.

55. On October 8, 2025, the Plaintiffs submitted their opposition to the Does' interim stay request, which consisted of a Memorandum of Law, affidavits of the President of the Board and counsel and exhibits. Plaintiffs' arguments in opposition to the Does' stay request included the following: (i) the Commissioner must recuse herself from presiding over the Doe Proceeding because she prejudged the matter, as evidenced by the September 24, 2025 letter, (ii) the Commissioner has no jurisdiction to rule on "novel constitutional issues," which are central to the Doe Proceeding, under her own well-established precedent, (iii) the Resolutions comply with both state and federal law, and (iv) even if state law is contrary to federal law as the Does claim, Title

IX and the Executive Order preempt state law under the Supremacy Clause of the United States Constitution.

**G. The Commissioner's Stay Order**

56. On October 14, 2025, the Commissioner entered the stay order in the Doe Proceeding, refusing to recuse herself, staying the Resolutions and, as a result, requiring Plaintiffs to allow biological males to enter intimate spaces with biological females.

57. The Commissioner's stay order states:

> State law and guidance on the rights of transgender individuals is unequivocal. Moreover, the people of New York State have codified the right to be free from discrimination on the basis of gender identity and expression in our State Constitution (N.Y. Const. Art. I, § XI). The case law, federal Executive Order (EO), and Title IX regulations relied upon by respondent are inapposite.
>
> . . .
>
> While the Commissioner has previously declined to address "novel issues of constitutional law," the Commissioner can address, and has addressed, constitutional claims on appeal (e.g., *Appeal of Music,* 63 Ed. Dept Rep, Decision No. 18,421 [concluding that petitioner was not entitled to a name-clearing hearing under the Fourteenth Amendment]; *Appeal of J.R. and N.R.,* 48 *id.* 239, Decision No. 15,848 [analyzing whether school officials engaged in an impermissible search under the Fourth Amendment])
>
> . . .
>
> Finally, there is no basis for my recusal. Respondent suggests that a September 24, 2025 letter co-signed by counsel to the State Education Department (SED) reflects that I have "demonstrated bias" and "prejudge[d]" the outcome of this appeal. In addition to the requirement that I exercise judicial functions (Education Law§ 301), such as examining and deciding all appeals under Education Law§ 310, I have general supervisory authority over schools and the responsibility to execute all education policies determined by the Board of Regents (Education Law § 305). Therefore, I am obligated, by myself or through SED staff, to "advise and guide ... school officers ... in relation to their duties and the general management of the schools under their control" (Education Law

> 305[2]) and opine on the legal obligations of public schools (*see Matter of Katonah-Lewisboro v. N.Y. State Educ. Dep't,* CV-24·0696 [3d Dept, Jul. 17, 2025]; 8 NYCRR 3.7). Such roles present no basis for a conflict and respondent has otherwise failed to identify any basis for my recusal. As such, I decline to recuse myself *(see Appeal of A.M,* 64 Ed. Dept Rep, Decision No. 18,573; *Application of McCray, et al.,* 57 *id.* Decision No. 17,307; *Application of Simmons,* 53 *id.* Decision No. 16,596).

58. Commissioner Rosa's stay order provides no support for her position that "[s]tate law and guidance on the rights of transgender individuals is unequivocal."

59. Despite Plaintiffs' fifteen citations to *Bruno*, Commissioner Rosa neither mentioned nor distinguished this controlling case.

60. Commissioner Rosa provided no explanation for how her September 24, 2025 letter, issued less than nine (9) days before the filing of the Doe Petition, reached the conclusions that, in passing the Resolutions, Plaintiffs "violate[d] state laws," that "[t]here is no federal law to the contrary," and that "enforcement actions may result" does not require her recusal under 20 NYCRR § 3000.8 or how she could preside neutrally over the Doe Proceeding.

61. Commissioner Rosa's letter did not state that the letter would be shared with NYCLU.

62. Indeed, after receiving the September 24, 2025 letter, Plaintiffs, through counsel, reached out to Mr. Morton-Bentley to schedule a call to develop an understanding of NYSED's position. That call was scheduled to proceed on October 3, 2025 at 11:30 a.m. At 10:28 a.m. that morning, Mr. Morton-Bentley, the signatory of the letter and Deputy Commissioner for NYSED cancelled the call stating: "[t]he Office of Counsel just received notice that two petitioners have filed an appeal against Massapequa under Education Law § 310 **regarding this issue**. Given this, I'll be unable to discuss this matter with you this morning." (emphasis added). Mr. Morton-Bentley's email cancelling the call clearly establishes that the Commissioner agrees that the Doe

Proceeding and the September 24, 2025 letter are in regard to the same issue.

63. Moreover, the Doe Proceeding could not have come as a surprise to Mr. Morton-Bentley, who himself forwarded his own September 24, 2025 email to the District directly to the NYCLU, which represents the Does, within seconds of dispatching it to the District.

64. Upon information and belief, Mr. Morton-Bentley and the Commissioner's office sent Mr. Morton-Bentley's letter immediately to NYCLU in an attempt to obtain NYCLU's assistance in prosecuting the district.

65. That was successful because as stated above, NYCLU only nine (9) days after receiving Mr. Morton-Bentley's letter filed the petition before the Commissioner on behalf of the Does.

66. In other words, the Commissioner, through her General Counsel's office, threatened enforcement against the District, recruited NYCLU to be an adversary for the District, declined to recuse herself from adjudicating the action commenced before her by NYCLU nine (9) days after recruiting, and ruled against the District in that proceeding without any justification other than stating that state law is "unequivocal" and federal law is "inapposite".

67. Notably, under NYSED procedures, all papers in the Doe Proceeding were and will be filed with NYSED's office of counsel, which is led by Mr. Morton-Bentley, the signatory of the Commissioner's September 24, 2025 letter. 8 NYCRR § 275.9(a). Like Commissioner Rosa, there is no indication that Mr. Morton-Bentley recused himself from the Doe Proceeding or the Stay Order.

68. Commissioner Rosa's stay order also provides no explanation for how she has jurisdiction to preside over the Doe Proceeding when Commissioner Rosa has repeatedly ruled that she does not have jurisdiction to adjudicate "novel constitutional issues."

69. Commissioner Rosa instead merely cited two appeals regarding well-settled, run-of-the-mill constitutional issues, nothing close to the constitutional preemption issues presented here. Commissioner Rosa's citation in her stay order to statutes authorizing her to "advise," "guide," and "opine" are irrelevant as they do not permit her to order action on novel constitutional issues.

70. Specifically, the issues raised require a preemption analysis under the Supremacy Clause of the United States Constitution based on Doe's own argument. *See* U.S. Const. Art. VI, cl. 2. The face of the September 9 Resolution itself cites, *inter alia*, Title IX, the President's Executive Order and federal case law as the basis for its adoption. The Doe Petition acknowledges that the alleged conflict between federal and state law is a cornerstone to the Doe Proceeding as Doe addressed the issue in ten (10) out of their sixty-one (61) paragraphs by arguing that no conflict exists.

71. The Commissioner has confirmed this on at least one other occasion stating that preemption, among other constitutional issues, was a basis to conclude that a proceeding before the Commissioner, like the Doe Proceeding, is "not the proper forum" requiring dismissal.

72. The Commissioner's decision that "case law, the federal Executive Order (EO), and Title IX regulations relied upon by respondent are inapposite" is entirely belied by State Defendants' guidance document titled *Creating a Safe, Supportive, and Affirming School Environment for Transgender and Gender Expansive Students: 2023 Legal Update and Best Practices* ("2023 Legal Update"), which expressly relied on Title IX and the same case law cited by Plaintiffs. In their opposition to the Does request for a stay, Plaintiffs specifically relied on the text of Title IX, USDOE's recent enforcement actions and the following federal case law that the Commissioner expressly cited in that 2023 Legal Update, which were either since reversed *en banc*

(*i.e.*, *Soule by Stanescu v. Connecticut Ass'n of Sch., Inc.*, 57 F.4th 43 (2d Cir. 2022), *rev'd en banc* 90 F.4th 34 (2d Cir. 2023); *Adams v. School Bd. of St. Johns County*, 968 F.3d 1286 (11th Cir 2020), *rev'd en banc* 57 F.4th 791 (11th Cir 2022)) or distinguished as inapplicable (*Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020)) by *Louisiana,* 603 U.S. 866*, Tennessee v. Cardona*, 762 F. Supp. 3d 615 (E.D. Ky. 2025) and Executive Order 14168.

73. The Commissioner failed to explain how Title IX and the foregoing case law, which she previously relied upon in the 2023 Legal Update disseminated to all school districts throughout the state, are now somehow "inapposite". Commissioner Rosa has not provided a "2024 Legal Update" or "2025 Legal Update" on Title IX, as she has attempted to undermine the Federal Government's own interpretation of Title IX.

**H. The Commissioner's Final Order**

74. On April 20, 2026, the Commissioner issued its final decision sustaining the appeal and ordering (1) "that the resolutions . . . adopted by the Massapequa Board of Education on September 9 and 18, 2025 . . . are hereby annulled," and (2) that the District "allow all students to access the school facilities, including bathrooms and locker rooms, that most closely align with their gender identity."

75. The final order parroted much of the Commissioner's stay order. For instance, the Commissioner rejected Plaintiffs' argument that she should recuse herself based on the ex parte communications between NYSED and "an attorney at the New York Civil Liberties Union, the organization that represents petitioners in this appeal," and held that "[f]orwarding a public document to a stakeholder group in lieu of a formal Freedom of Information Law request reflects governmental transparency, not . . . 'collusion.'"

76. On the merits, the Commissioner held that the Resolutions constituted

impermissible gender-based discrimination in violation of GENDA and DASA because they "exclud[e] transgender girls from girls' facilities and exclude[e] transgender boys from boys' facilities" and "targeted a discrete group of people who have become increasingly vilified by irresponsible adults."

77. The Commissioner further held that the District's provision of gender-neutral bathrooms did not control because the HRL and Dignity Act do not contemplate a "reasonable accommodation" exception and the Resolutions "compel" transgender students to use such gender-neutral facilities.

78. The order further rejected Plaintiff's claim that Title IX permits sex-segregated facilities and therefore preempts any conflicting state law:

> Respondents' Title IX preemption arguments are also without merit. While it is true that an appeal to the Commissioner pursuant to Education Law § 310 is not an appropriate forum to adjudicate claims under Title IX (*Appeal of Brockway*, 62 Ed Dept Rep, Decision No. 18,218; *Appeal of J.H. and R.H.*, 57 *id.*, Decision No. 17,317; *Appeal of A.G.*, 56 *id.*, Decision No. 17,084), petitioners make no such claims. Indeed, petitioners only refer to Title IX to rebut respondents' reliance on the statute as a justification for enacting the challenged resolutions. Additionally, there is nothing in Title IX, its implementing regulations, or the executive orders relied on by respondents that conflicts with the State laws that are within my purview to enforce. Contrary to respondents' assertions, neither Title IX nor its implementing regulations define "sex" (20 USC § 1681 *et seq.*). Nor do these federal laws mandate sex segregated facilities (34 CFR 106 [2020]). Further, Executive Orders 14190 and 14201 do not affect the rights of transgender students and individuals in New York's public schools. As such, no federal law, including Title IX and its implementing regulations, conflicts or excuses noncompliance with the HRL, GENDA, or the Dignity Act. Therefore, I need not address constitutional issues under the Supremacy Clause or the Due Process Clause.

## I. Biological Girls Have Experienced Pervasive Harassment and Invasions of Privacy Because of the Presence of Biological Boys in the Girls' Bathroom and Locker Room

79. Prior to the enactment of the Board's Resolutions, there was no specific guidance on the use of intimate space facilities.

80. Before the start of the 2025-2026 school year, neither the Board nor the District believed there was a need to enact a formal policy, instead opting to deal with issues as they arose and providing students with accommodations so that all students' needs are met. The school made available boys' bathrooms and girls' bathrooms.

81. At the start of the 2025-2026 school year, however, Plaintiffs became aware of: (i) USDOE's enforcement actions over the summer discussed above, and (ii) several incidents in their schools where biological males entered the girls' bathrooms. Several female students complained of harassment and invasions of their privacy stemming from these incidents.

82. Responding to the concern that the lack of a formal policy to ensure that the school maintained single-sex intimate spaces could expose Plaintiffs to Title IX liability and loss of federal funding, Plaintiffs enacted the Resolutions.

83. After the Resolutions were enacted, biological males no longer entered the girls bathroom or locker-room and no incidents were reported by female students.

84. Following Commissioner Rosa's stay order, a biological male used the girls' bathroom as recently as October 20, 2025.

85. Consequently, biological girls must share the bathroom with biological males in accordance with the Commissioner's final decision on April 20, 2026.

86. Because males have entered sensitive female only spaces like bathrooms and locker rooms, biological girls in the District have been subjected to harassment, invasions of privacy, and risks to their safety. Students using the bathroom or changing clothes for physical education class fear that these harms will continue if biological males are allowed to enter the female facilities. (and vice versa). Several students and parents have expressed these concerns experienced first hand during the District's Board of Education meetings.

87. As the USDOE has noted, "a recently released report finds that requiring women to undress or use the bathroom in the presence of men causes distress in women, violates their right to privacy, and can deny women equal access to benefits of education programs and activities. See Reem Alsalem, Special Rapporteur on Violence Against Women and Girls, Its Causes and Consequences, U.N. Doc. A/79/325 at 5/24 (August 27, 2024), https://docs.un.org/en/A/79/325.

88. The report indicates that policies denying female students sex-separated intimate facilities increases the risk of sexual harassment, assault, voyeurism, and physical and sexual attacks.

89. Moreover, in its recent enforcement action against Fairfax County Public Schools, USDOE observed that female students had become concerned because a male student sharing the bathroom with female students "made sexual jokes, momentarily touched other students in an inappropriate manner, and watched female students changing in the locker room." Letter of Findings – OCR case nos. 11251305; 11251306; 11251307; 11251308; and 11251309 at 13.

90. Commissioner Rosa's final order facilitates this continued harassment towards biological girls and other students, including discomfort, embarrassment, psychological harm, and potential physical injury, by allowing biological males to enter sensitive, female only facilities.

## CLAIMS

### Count I
### Federal Preemption of New York's Prohibition on Sex-Separated Intimate Facilities (Against All Defendants)

91. Plaintiffs repeat and incorporate by reference herein the allegations of the preceding paragraphs as if fully set forth herein.

92. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under

any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681.

93. The Constitution makes federal law "the supreme Law of the Land," U.S. CONST. art. VI, cl. 2, and any state law that is contrary to federal law is preempted and thus invalid under the Supremacy Clause.

94. State law is preempted by federal law if it directly conflicts with a provision of federal law. State law directly conflicts with federal law either if it is physically impossible to comply with both federal and state law or if state law stands as an obstacle to the full accomplishment and execution of the purposes and objectives of federal law.

95. Title IX and its implementing regulations preempt New York law to the extent New York law requires schools to allow biological males identifying as female entry into female only intimate facilities (such as bathrooms or locker rooms).

96. By allowing males to enter sensitive female only spaces like locker rooms (and vice versa), Commissioner Rosa's final order, annulling the Board's Resolutions, endangers female students' safety, privacy, and dignity; creates a hostile environment for students; and denies them access to educational activities or programs in violation of Title IX.

97. In fact, students have already faced pervasive harassment from biological males while using intimate facilities and students fear that they will face similar harassment or invasions of their privacy if Commissioner Rosa's order remains in effect.

98. Therefore, the New York Defendants' interpretation of state law makes compliance with both federal and state law impossible for New York public schools receiving federal funds like the District.

99. Additionally, Defendants' interpretation of New York law obstructs Title IX's objectives. Eliminating sex-separate bathrooms and locker rooms, as the Defendants have done

here, "render[s] the purpose of [Title IX] obsolete in terms of the privacy interests Congress sought to protect by permitting sex-based segregation in sensitive areas where separation has been traditional." *Tennessee*, 737 F. Supp. 3d at 559. "[T]he privacy afforded by sex-separated bathrooms has been widely recognized throughout American history and jurisprudence. In fact, 'sex-separation in bathrooms dates back to ancient times, and, in the United States, preceded the nation's founding.'" *Adams*, 57 F.4th at 805. Thus, allowing access to intimate facilities based on gender identity undermines this privacy interest by exposing students to members of the opposite-biological-sex, frustrating federal goals.

100. Accordingly, State Defendants' interpretation of state law as banning sex-segregated intimate facilities is in actual conflict with Title IX and invalid under the Supremacy Clause of the United States Constitution. Consequently, an actual justiciable controversy exists which may be determined by a declaratory judgment of this Court.

101. State Defendants therefore cannot enforce New York law or the Commissioner's order against Plaintiffs based on the Resolutions.

102. Plaintiffs are therefore entitled to the requested declaratory and injunctive relief *infra*.

**<u>Count II</u>**
**Declaratory Judgment-Resolutions Comply with Title IX**
**(Against All Defendants)**

103. Plaintiffs repeat and incorporate by reference herein the allegations of the preceding paragraphs as if fully set forth herein.

104. An actual and justiciable controversy exists between the parties with respect to the scope of Title IX.

105. Despite previously relying on Title IX in their 2023 Legal Update, the State

Defendants have asserted without explanation that "[t]he case law, federal Executive Order (EO), and Title IX regulations relied upon by respondent are inapposite" and state law is "unequivocal" despite never once citing or explaining why *Bruno* does not apply. Therefore, according to New York state officials, the Board's Resolutions are in violation of their interpretation of state law because federal law does not apply. Plaintiffs' position—and that of the President of the United States under Executive Orders 14168, 14190 and 14201 and USDOE—is that Title IX not only allows but requires intimate facilities in schools to be sex-segregated. As such, the Board's Resolutions not only comply with Title IX, but are compelled by federal law.

106. Additionally, USDOE investigates and enforces violations of Title IX by terminating federal funding or referring prosecutions to the DOJ and have done that to public school districts that have adopted and enforced bathroom/locker room policy consistent with the Commissioner's final order as discussed *supra*. *See* 20 U.S.C. § 1682 and 34 C.F.R. Part 106. Therefore, if the New York state officials' interpretation of Title IX is correct, the District and Board would face the threat of enforcement actions by federal regulators.

107. Accordingly, Plaintiffs and Defendants have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment on the disputed matters raised herein.

108. Plaintiffs are therefore entitled to the requested declaratory and injunctive relief *infra*.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request the Court enter an Order and Judgment against Defendants and in favor of the Plaintiffs on all causes of action set forth herein, and grant Plaintiffs the following relief:

(i) A declaratory judgment that Plaintiffs' policies, practices, and actions related to the Resolutions comply with, and do not constitute a violation under, Title IX;

(ii) A declaratory judgment that Plaintiffs' policies, practices, and actions related to the Resolutions comply with, and do not constitute discrimination under, New York State law, including but not limited to DASA, GENDA and Proposition One;

(iii) A declaratory judgment that Title IX preempts DASA and GENDA, Proposition One and other New York state law to the extent that state law requires access to intimate spaces (*i.e.*, bathrooms and locker rooms) in public school district buildings in accordance with a students' gender identity;

(iv) A declaratory judgment that the Commissioner's final order entered in the Doe Proceeding cannot be enforced;

(v) A permanent injunction enjoining Defendants Commissioner Rosa, Commissioner Miranda, and Attorney General James (including any officers, employees, and agents thereof) from taking enforcement action against Plaintiffs on the ground that the Resolutions and/or enforcement thereof by Plaintiffs violates law;

(vi) Awarding Plaintiffs the costs and attorneys' fees associated with this action; and

(vii) Such other and further relief as this Court deems just and proper.

[*Remainder of Page Intentionally Left Blank*]

Dated: New York, New York
August 20, 2026

Respectfully submitted,

**HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK PLLC**

By: _*/s/ Susan Geeene*________
Susan Greene. (4687349)
1325 6th Avenue, Suite 2843
New York, New York 10019
Phone: (646) 792-9288
sgreene@holtzmanvogel.com

RIGANO LLC

By: */s/ Nicholas Rigano*________
Nicholas C. Rigano, Esq. (NR1345)
534 Broad Hollow Road, Suite 100
Melville, New York 11747
Telephone No. (631) 756-5900
nrigano@riganollc.com

*Attorneys for Plaintiffs*