# EXHIBIT E

843pm
DA
RECEIVED
OCT 3 2025
MASSAPEQUA PUBLIC SCHOOLS
OFFICE OF THE SUPERINTENDENT

STATE OF NEW YORK
STATE EDUCATION DEPARTMENT

---

In the Matter of the Petition of

Jane and John Doe,
ON BEHALF OF Janie Doe,

Petitioners,

from action of the Board of Education
of the Massapequa Union Free School District,

Respondent,

regarding discriminatory denial of equal access to facilities.

**NOTICE OF PETITION**

Appeal No.: ________

---

District Clerk's Office
Massapequa Union Free School District
4925 Merrick Road
Massapequa, NY 11758

**NOTICE:**

YOU ARE HEREBY REQUIRED to appear in this appeal and to answer the allegations contained in the petition. Your answer must conform with the provisions of the regulations of the Commissioner of Education relating to appeals before the Commissioner of Education, copies of which are available at www.counsel.nysed.gov or from the Office of Counsel, New York State Education Department, State Education Building, Albany, NY 12234.

Please take further notice that the within petition contains an application for a stay order. Affidavits in opposition to the application for a stay must be served on all other parties and filed with the Office of Counsel within three (3) business days after service of the petition.

If an answer is not served and filed in accordance with the provisions of such rules, the statements contained in the petition will be deemed to be true statements, and a decision will be rendered thereon by the commissioner.

PLEASE TAKE NOTICE that such rules require that an answer to the petition must be served upon the petitioners, or if the petitioner be represented by counsel, upon the counsel, within 20 days after the service of the appeal, and that a copy of such answer must, within five days after such service, be filed with the Office of Counsel, New York State Education Department, State Education Building, Albany, NY 12234.

DATED: October 2, 2025

NEW YORK CIVIL LIBERTIES UNION FOUNDATION

Emma Curran Donnelly Hulse
Gabriella Larios
Stefanie D. Coyle
Bobby Hodgson
*Attorneys for Petitioner*
125 Broad St., Fl. 19
New York, NY 10004
212-607-3344

CC: Joshua Dingman, Appeals Coordinator
New York State Education Department
Office of Counsel
89 Washington Avenue, Room 148 EB
Albany, NY 12234

STATE OF NEW YORK
STATE EDUCATION DEPARTMENT

---

In the Matter of the Petition of

Jane and John Doe,
ON BEHALF OF Janie Doe,
Petitioners,

**VERIFIED PETITION**

from action of the Board of Education
of the Massapequa Union Free School District,
Respondent,

Appeal No.: ________

regarding discriminatory denial of equal access to facilities.

---

TO THE COMMISSIONER OF EDUCATION:

1. The circumstances giving rise to this appeal are the Massapequa Union Free School District Board of Education's ("the Board" or "the District") decision to pass two resolutions ("the resolutions") prohibiting transgender and gender non-conforming students from using the facilities—including restrooms and locker rooms—that align with their gender identity and ordering district staff to enforce this exclusion.

2. Petitioners bring this appeal on behalf of their daughter, Janie Doe, a fourteen-year-old transgender girl who is barred from using the girls' restrooms and locker room. Despite initially being allowed to use the girls' facilities at the beginning of the school year, Janie is now being forced to use the boys' or gender-neutral facilities pursuant to the District's discriminatory resolutions in contravention of state law. Janie is experiencing significant ongoing distress due to being treated differently than other girls because, and only because, she is transgender.

3. The Board's resolutions are contrary to the Dignity for All Students Act ("DASA") and its implementing regulations. Furthermore, the Board has failed to offer a rational basis for its

decision to pass the resolutions, rendering the Board's action arbitrary and capricious.

4. Pursuant to Education Law § 310, Petitioners have been aggrieved by the District and bring this Petition seeking a stay of the resolutions and an order allowing their daughter to use the girls' bathrooms and locker room during the pendency of this appeal. Petitioners also seek annulment of the resolutions and an order directing the District to allow all students to access school facilities that align with their gender identity.

## FACTUAL BACKGROUND

5. Petitioners John and Jane Doe ("Petitioners" or "Mr. Doe" or "Mrs. Doe") are the parents of Janie Doe, a 14-year-old student in the District (Affidavit of Jane Doe ["Petitioner aff"] ¶¶ 1, 5-6; Affidavit of Janie Doe ["Janie aff"] ¶ 2).

6. Janie is a transgender girl who has been diagnosed with gender dysphoria. Prior to her diagnosis, Janie struggled with anxiety, depression, self-harm, and suicidal ideation as a result of the incongruence between her gender identity and the fact that she had been treated as a boy since her birth (Petitioner aff ¶¶ 3–4; Janie aff ¶¶ 3, 5).

7. Janie receives weekly counseling sessions to help cope with her symptoms of gender dysphoria. Part of her treatment plan includes being treated as a girl in all respects, including by using the girls' restrooms and locker room (Petitioner aff ¶ 4; Janie aff ¶ 5).

8. Janie came out as transgender to her parents in 2024 and, with the support of her family, began to socially transition (Janie aff ¶¶ 4, 7).

9. Despite support from some school staff members and students, this transition was "incredibly difficult." Janie was constantly misgendered by students and teachers and faced significant bullying from other students. As a result, Janie was extremely anxious about beginning high school (Janie aff ¶¶ 7–9).

10. On or around June 30, 2025, Mrs. Doe spoke on the phone with Dr. Brian Trapani, Assistant Superintendent for Curriculum & Instruction, about changing the spelling of Janie's name and her gender marker to "F" for female so that she could use the girls' restrooms and locker room when she began ninth grade. Mrs. Doe told Dr. Trapani that these changes were important to protect her privacy since she would be meeting new faculty at the Ames campus. Dr. Trapani assured Mrs. Doe that this request would be granted (Petitioner aff ¶¶ 7, 10).

11. On or around September 1, Mrs. Doe noticed that Janie's name and gender marker had not yet been changed in her school records. She emailed Dr. Trapani to follow up on their prior conversation and was assured that the changes would be made immediately and that the Ames administration and Physical Education teachers were aware that Janie would be using the girl's locker room (Petitioner aff ¶¶ 8–9).

12. Janie began ninth grade at Massapequa High School – Ames Campus on September 2, 2025 (Janie aff ¶ 10).

13. On the first day, Janie's gym teacher asked if she wanted to use the gender-neutral or girls' locker room. Janie said that she wanted to use the girls' locker room and was allowed to do so. As a result, Janie felt affirmed in her identity. Janie's gender dysphoria is alleviated when she can use girls' facilities since she is being treated like the girl that she is. This reduces her anxiety, allowing her to focus on school and enjoy the activities she loves (Janie aff ¶ ¶ 5, 11).

14. On September 5, Mr. and Mrs. Doe met with Dr. Trapani, Dr. William Brennan, the Superintendent of Schools, and Ms. Tania Willman, the Principal of the Ames Campus. The administrators told them that Janie could use the girls' facilities for now, but that the Board was discussing the matter. Dr. Brennan told them that the District created a gender-neutral locker room over the summer and that Janie was welcome to use it. Mrs. Doe pointed out that Janie is legally

entitled to use the girls' locker room pursuant to state law (Petitioner aff ¶¶ 11–12).

15. On September 9, the Board passed a resolution stating that "the policy of the Massapequa Board of Education mandates that all students shall be required to use facilities-including restrooms and locker rooms-that correspond with the students' sex as defined under Title IX and federal law." Elsewhere in the resolution, it makes clear that this language referencing Title IX, while inaccurate,[1] creates a rule that excludes transgender girls from girls' facilities and excludes transgender boys from boys' facilities. The resolution provides that "any student who requests an alternative arrangement shall be provided access to a designated gender-neutral facility, but shall not be permitted to use facilities designated for the opposite sex" and directs the Superintendent of Schools to revise policies, procedures, and communications accordingly (Affirmation of Emma Curran Donnelly Hulse ["Hulse affirmation"], exhibit A at 5).

16. The Board justified this change in policy by citing to two federal court cases—from Tennessee and Kansas, respectively—and President Donald Trump's January 20, 2025 Executive Order 14168 (*see* Hulse affirmation, exhibit A, at 4; *see also* Hulse affirmation, exhibit B).[2]

17. The Board did not discuss the resolution at the September 9 meeting and there was no public comment. The resolution passed unanimously (Massapequa Regular Board Meeting 09-09-2025 at [1:20:26][3]; *see also* Hulse affirmation, exhibit C).

18. There was also no discussion of the resolution at the Board meetings immediately preceding the September 9 meeting (*see* Hulse affirmation, exhibits D–G).

19. On September 10, Mr. and Ms. Doe were called in to meet with Dr. Trapani and

---

[1] There is no definition of "sex" in Title IX or elsewhere in federal law that would exclude transgender girls or women from the designation of female. The Board relies on an Executive Order issued by President Trump—which does not and cannot change federal statutory law—purporting to define "sex" to mean the sex designation assigned to a person at birth and to exclude transgender girls and women from the designation "female" (*see infra* ¶¶ 51–56).

[2] The resolution also authorized the Board's "special counsel . . . to commence litigation in Federal and/or State court for declaratory relief regarding potential Federal civil rights actions" (Hulse affirmation, exhibit A at 5).

[3] Available at https://www.youtube.com/live/A5GMEBvhqf0?si=2nsvehAJEYOx-Vgv&t=4826.

Dr. Brennan. The administrators told them that the Board had passed the resolution and, as a result, effective immediately Janie would no longer be allowed to use the girls' restroom and locker room and would instead have to use the boys' or gender-neutral facilities (Petitioner aff ¶¶ 14–15).

20. Mr. and Mrs. Doe were "devastated." They were also upset that they were not given advance notice that the Board would take up a resolution at the September 9 meeting so they could speak up on Janie's behalf before it was passed (Petitioner aff ¶ 16).

21. When Mr. and Ms. Doe broke the news to Janie, she immediately began crying. Janie feels like she is being bullied by the Board directly, and her anxiety and depression have worsened (Petitioner aff ¶ 17; Janie aff ¶ 13–14).

22. As a result of the mounting anxiety, Janie has been unable to concentrate in school and decided to drop her AP Human Geography class (Petitioner aff ¶ 25; Janie aff ¶ 23).

23. On September 18, 2025, the Board passed a second resolution referencing the September 9 resolution and "direct[ing] the Superintendent of Schools to enforce and carry out all [its] requirements" (Hulse affirmation, exhibit H at 2).

24. On the morning of Monday, September 22, Dr. Brennan called Mr. and Mrs. Doe to inform them of the passage of the second resolution. Dr. Brennan told them they would have to tell Janie about the resolution. Janie called her parents shortly thereafter and they informed her of the Board's order (Petitioner aff ¶¶ 18–19; Janie aff ¶ 15).

25. Later that morning, Janie found a security guard stationed outside the girls' locker room when she arrived for gym class. The security guard asked her if she was Janie Doe. When she replied in the affirmative, the guard responded, "with all due respect, I can't let you in here," and said Janie could not use the girls' locker room and instead had to use the boys' or gender-neutral locker room (Janie aff ¶ 16).

26. Janie went to the school guidance office to call her parents to tell them about the security guard. She did not feel comfortable going to gym class, so she stayed in the office for the remainder of the period. She tried to attend her science class, but she felt nauseated. She returned to the guidance counselor's office, called her parents, and asked them to pick her up because she did not feel safe at school (Petitioner aff ¶ 20; Janie aff ¶ 17).

27. On September 24, Mrs. Doe emailed the assistant principal to request a list of the gender-neutral restrooms at the Ames campus. The assistant principal informed her that in addition to the restroom in the gender-neutral locker room, there was only one other gender-neutral restroom. The gender-neutral restrooms are not located near Janie's classrooms and traveling there would require her to miss class time (Petitioner aff ¶ 22; Janie aff ¶ 19).

28. Janie used the gender-neutral locker room for the first time on September 26. Janie felt "humiliat[ed] and isolat[ed]" using the gender-neutral locker room and cried before gym class. Janie says that using the gender-neutral locker room "makes [her] gender dysphoria worse because it shows [her] that people are not willing to treat [her] like a girl and allow [her] to use the facilities [she has] the right to use" (Petitioner aff ¶ 23; Janie aff ¶ 20).

29. Because of her fears of harassment from other students and school officials, Janie avoids using the bathroom. "I do not go to the bathroom even when I have to," she says, "because I am scared about outing myself as transgender to teachers and classmates" (Janie aff ¶ 18).

30. As a result of being targeted by the Board, Janie has begun to dread going to school and has felt "all-consuming stress and anxiety." She has repeatedly told her parents she does not want to go to school. Janie has also struggled to enjoy her extracurricular activities, even those that take place outside of school (Janie aff ¶¶ 21–22, 24–25).

31. Mr. and Mrs. Doe have also been experiencing acute anxiety and both have had

trouble sleeping. Mrs. Doe explains that "[i]t is incredibly difficult to watch our daughter experience such distress due to the Board's discriminatory policy" and that she and her husband "are worried that our daughter's education will continue to be derailed" (Petitioner aff ¶¶ 24–25).

32. Mr. and Mrs. Doe filed this appeal so that all transgender students can "use the bathrooms and locker rooms that they feel safest and most affirmed in" (Petitioner aff ¶ 26).

## ARGUMENT

### A. THE BOARD'S FACIALLY DISCRIMINATORY RESOLUTION MUST BE ANNULLED.

#### 1. THE BOARD'S RESOLUTION IS CONTRARY TO LAW AND REGULATION.

33. The Board's September 9 and 18, 2025 resolutions violate DASA and its implementing regulations by denying transgender students access to school facilities that align with their gender identity. On their face, they discriminate unlawfully on the basis of gender identity. They are therefore contrary to law and regulation and must be annulled.

34. The Commissioner has sustained appeals pursuant to Education Law § 310 where a district's action was "contrary to law and regulation" (*Appeal of Doyle*, 52 Educ Dept Rep, Decision No. 16,429 [sustaining appeal where respondent district failed to comply with health education requirements codified in regulation]; *see also Appeal of A.M.*, 64 *id.*, Decision No. 18,573 [concluding respondent district failed to remedy violations of regulations regarding school facilities and services and awarding requested remedy]). Similarly, the Commissioner has sustained appeals where a school board's decision directly contravened guidance from the Commissioner regarding how to comply with relevant laws and regulations. For example, in *Appeal of McMillan* (61 Educ Dept Rep, Decision No. 18,058), the Commissioner concluded that respondent district's continued use of a Native American mascot conflicted with long-standing guidance and "inhibit[ed] the creation of a safe and supportive environment," annulling the

district's resolution retaining the mascot (*id.* [internal quotation marks omitted]). Here, as discussed below, the challenged resolutions are in direct conflict with the relevant statutory text, binding regulations, and specific guidance on this precise issue.

35. DASA's purpose is "to afford all students in public schools an environment free of discrimination and harassment" while "prevent[ing] and prohibit[ing] conduct which is inconsistent with a school's educational mission" (Education Law § 10).

36. To achieve that purpose, DASA provides that no student shall be "subjected to discrimination based on a person's actual or perceived . . . gender" (Education Law § 12 [1]).

37. "Gender" is defined in the statute as "actual or perceived sex and shall include a person's gender identity or expression" (Education Law § 11 [6]).

38. DASA's implementing regulations identify examples of discriminatory acts that violate the law, including "the denial of access to school facilities, functions, opportunities or programs including, but not limited to, restrooms, changing rooms, locker rooms, and/or field trips, based on a person's actual or perceived . . . gender identity" (8 NYCRR 100.2 [kk][1][xi][a]).

39. These provisions are consistent with the New York State Human Rights Law ("NYSHRL"), which prohibits an educational institution from "deny[ing] the use of its facilities to any person . . . by reason of [her] . . . gender identity" (Executive Law § 296 [4]). The New York State Division of Human Rights has issued guidance unequivocally stating, to comply, "a covered entity must allow individuals to use facilities that are consistent with their gender identity, regardless of the individual's sex assigned at birth, anatomy, gender, medical history, appearance, or the sex indicated on the individual's identification."[4]

[4] NYS DHR, *Guidance on Protections from Gender Identity Discrimination Under the New York State Human Rights Law*, at 7 [Jan. 29, 2020], available at https://dhr.ny.gov/system/files/documents/2022/04/nysdhr-genda-guidance-2020.pdf.

40. NYSED has repeatedly issued guidance designed to "assist public schools in cultivating an educational environment for all students that is safe and free from discrimination" and "facilitate[] compliance" with state law, including both the NYSHRL and DASA (*see* Hulse affirmation, exhibit I at 4, 7). NYSED's guidance clearly states that "[d]enying the use of restrooms or other facilities because of a person's gender identity is a violation of NYS Human Rights Law and is unlawful discrimination" (*id.* at 23).[5]

41. These state law protections are well-settled and do not conflict with Title IX. As explained below, *no* circuit has held that Title IX requires that transgender students be excluded from facilities that align with their gender identity in contravention of state law, and several have held that Title IX affirmatively requires schools to permit students to access facilities consistent with their gender identity even in the absence of state law protections (*see infra* ¶¶ 51–54).

42. The Board's September 9 resolution is facially unlawful. The resolution explicitly states that "any student who requests an alternative arrangement shall be provided access to a designated gender-neutral facility, but shall not be permitted to use facilities designated for the opposite sex" (*supra* ¶ 15). Denying students access to the bathrooms and locker rooms that align with their gender identity explicitly violates both DASA and its implementing regulations, which generally prohibit discrimination based on gender identity and specifically identify exclusion from gender-affirming bathrooms and locker rooms as an example of prohibited discrimination

[5] Guidance on this specific issue has been clear and longstanding (*see* Hulse affirmation, exhibit J, NYSED, *Guidance to School Districts for Creating a Safe and Supportive School Environment for Transgender and Gender Nonconforming Students* [2015] at 10 ["Alternative accommodations, such as a single 'unisex' bathroom or private changing space, should be made available to students who request them, **but should never be forced upon students,** nor presented as the only option"] [emphasis in original]; *see also* Eric T. Schneiderman & MaryEllen Elia, *Joint Guidance Clarifying New York Schools Responsibility to Protect Transgender Students* [Feb. 28, 2018], available at https://www.nysed.gov/sites/default/files/nysed-oag-joint-guidance-letter-2-28-18.pdf.) The Commissioner has also warned school boards that "Board members who permit the harassment of LGBTQ+ students may expose their school districts to liability under New York law" (Letitia James & Dr. Betty A. Rosa, *Joint Guidance on Harassment and Bullying at School Board Meetings* [May 8, 2025], available at https://ag.ny.gov/sites/default/files/2025-05/joint-guidance-on-harassment-and-bullying-at-school-board-meetings.pdf).

(Education Law § 11 [6]; 8 NYCRR 100.2 [kk][1][xi][a]; *see also* Executive Law § 296 [4]).[6]

43. The resolutions also contravene clear guidance from NYSED that denying a student's request to use the bathroom or locker room that most closely aligns with their gender identity and forcing them to use a gender-neutral facility—as the District has done here—is "unlawful discrimination" (Hulse affirmation, exhibit I at 23).

44. This flagrant violation of state law requires an immediate remedy, especially because of the immense harm the Board's action has inflicted on Janie and her family (8 NYCRR 276.1["The commissioner may, in []her discretion, with or without application therefor, grant a stay if in the commissioner's judgment the issuance of such a stay is necessary to protect the interests of the parties . . . pending an ultimate determination of the appeal."]). The Commissioner has recognized that where—as here—a district's actions are contrary to regulation a grant of a stay is appropriate (*see Appeal of A.M.*, 64 Educ Dept Rep, Decision No. 18,573).

45. As a result of the Board's unlawful action, Janie is suffering immediate harm. Janie has avoided using the bathroom at school because of the fear of being outed as trans to fellow students or staff. She has struggled to focus on her studies and lost interest in her extracurricular activities. She has begun to "dread" going to school at all. Mr. and Mrs. Doe rightly fear that the District's explicit targeting of their daughter—going so far as to place a security guard outside of the girls' locker room to prevent her entry—has derailed her education (*supra* ¶¶ 25–31).

46. Expedited interim relief is especially appropriate here, where the Board's actions

---

[6] DASA's statutory scheme charges local school districts with creating "policies, procedures and guidelines" for investigating reports of harassment, bullying, and discrimination (*see* Education Law § 13). While the Doe family has not filed a DASA report with the District related to this matter, requiring them to do so would be futile. The party who is responsible for violating DASA is the Board itself, which is responsible for ultimate review of all such complaints (*see* Massapequa School District Policy 5300.8-R Student Harassment and Bullying Prevention and Intervention Regulation [Nov 18, 2021], available at https://boardpolicyonline.com/?b=massapequa&s=1393975). Furthermore, the Commissioner has previously declined to dismiss appeals on grounds of exhaustion where a district's DASA policy – like the Board's – is permissive and not mandatory (*Appeal of R.E.*, 56 Educ Dept Rep, Decision No. 17,003).

have caused a vulnerable 14-year-old to feel "humiliat[ed]" and "isolate[ed]" in her own school, worsening her gender dysphoria and pre-existing anxiety and depression (*supra* ¶¶ 21, 28. DASA charges school districts with *preventing* discrimination: not with perpetrating it against the young people entrusted to their care (*supra* ¶¶ 35–38; Education Law § 12 [1]; *see also Appeal of A.M.*, 64 Educ Dept Rep, Decision No. 18,573 [awarding a stay where "respondent's acts and omissions" were "extraordinary"]).

47. For all these reasons, because the Board's resolutions are contrary to law and regulation, the Commissioner must annul them and order the District to allow all transgender and gender-nonconforming students to access the facilities that most closely align with their gender identity (*Appeal of Doyle*, 52 Educ Dept Rep, Decision No. 16,429 [sustaining appeal where district action was contrary to law and regulation]; *Appeal of McMillan*, 61 Educ Dept Rep, Decision No. 18,058 [sustaining appeal where district action contravened state guidance and "inhibit[ed] the creation of 'a safe and supportive environment'"]).

**2. THE BOARD'S RESOLUTIONS ARE ARBITRARY AND CAPRICIOUS.**

48. The Board's September 9 and September 18 resolutions are arbitrary and capricious. This constitutes an independent basis for their annulment.

49. "The arbitrary or capricious test chiefly 'relates to whether a particular action should have been taken or is justified . . .'" (*Pell v Bd. of Educ. of Union Free Sch. Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 [1974], quoting Administrative Law § 184). "Arbitrary action is without sound basis in reason and is generally taken without regard to the facts" (*id.*) School board decisions that are "not supported by a rational basis in the record . . . must be set aside" (*Appeal of Kauffman*, 57 Educ Dept Rep, Decision No. 17,250 [annulling grade reorganization plan where the decision was unexplained in the record and

no debate or discussion proceeded the vote]; *accord Appeal of Mathis & Dahlia*, 28 Educ Dept Rep 347 [Decision No. 12,132]).

50. In support of the September 9 resolution, the Board offered a handful of "whereas" clauses that mischaracterize Title IX's requirements and mistakenly rely on non-binding authorities. This blatantly erroneous description of federal law does not constitute a rational basis for the Board's decision (*see Pell*, 34 NY2d at 231).

51. Contrary to the Board's description of the state of the law, no federal circuit court of appeals has held that Title IX requires that transgender students be excluded from bathrooms and locker rooms that align with their gender identity in contravention of state law (*Soule v Connecticut Assn. of Schs., Inc.*, 90 F4th 34, 66 [2d Cir 2023] [Nathan, J., concurring]).

52. Indeed, the vast majority of circuits that have squarely considered the question have concluded that Title IX affirmatively requires school districts to provide students access to the bathrooms and locker rooms that align with their gender identity, even in the absence of state law protections (*see e.g. A.C. by M.C. v Metropolitan Sch. Dist. of Martinsville*, 75 F4th 760, 771 [7th Cir 2023] [holding that districts' "refusal to grant gender-affirming facility access to the plaintiffs amounts to discrimination" prohibited by Title IX]; *Grimm v Gloucester Cnty. Sch. Bd.*, 472 F3d 586, 619 [4th Cir 2020], *as amended* [Aug. 28, 2020] [determining that restroom policy denying plaintiff right to use bathroom that corresponded to his gender identity violated Title IX], *cert denied*, 141 S Ct 894 [2020]; *Doe by Doe v South Carolina*, No. 25-1787, 2025 WL 2375386, at *8 [4th Cir Aug. 15, 2025] [clarifying that "*Grimm* remains the law of this Circuit" and affirming grant of preliminary injunction to plaintiff seeking right to use bathroom that corresponded to his gender identity], *cert denied*, 2025 WL 2610400 [Sept. 10, 2025]; *Doe by and through Doe v Boyertown Area Sch. Dist.*, 897 F3d 518, 533 [3d Cir 2018] ["We . . . agree with the School

District's position that barring transgender students from restrooms that align with their gender identity would itself pose a Title IX violation"], *cert denied,* 139 S Ct 2636 [May 28, 2019]).

53. The only circuits to reach a different conclusion simply held that schools are not required to provide access to gender-affirming facilities (*see Adams v School Bd. of St. Johns County,* 57 F4th 791, 815 [11th Cir 2022]; *Roe by and through Roe v. Critchfield,* 131 F4th 975, 992 [9th Cir 2025]). Those courts did *not* hold that Title IX mandates exclusion and did not consider the question of whether Title IX preempts state law (*see generally id.*).

54. Indeed, the District's determination that compliance with Title IX requires excluding students from the facilities that align with their gender identity does not comport with the language of the statute, which does not require the creation of separate bathrooms and locker rooms (*see Parents for Priv v Barr,* 949 F3d 1210, 1228 [9th Cir 2020] ["[J]ust because Title IX authorizes sex-segregated facilities does not mean that they are required, let alone that they must be segregated based only on biological sex and cannot accommodate gender identity. Nowhere does the statute explicitly state, or even suggest, that schools may not allow transgender students to use the facilities that are most consistent with their gender identity."]).

55. The September 9 resolution relied on two out-of-circuit lower court cases enjoining the implementation of amended Title IX regulations under the Administrative Procedures Act (*see Tennessee v Cardona,* 737 F Supp 3d 510 [ED Ky 2024]; *Kansas v United States Dept of Educ,* 739 F Supp 3d 902 [D Kan 2024]). Neither case is binding. Furthermore, neither court considered or decided whether state-level statutory protections for transgender people violate Title IX (*id.*).

56. The Board's reliance on Executive Order 14168 is also misplaced. The Executive Order purports to interpret Title IX as requiring the exclusion of transgender students from single-sex spaces, including bathrooms (*see* 90 Fed Reg 8615 [Jan 20, 2025]). The President cannot

unilaterally restrict the meaning of "sex" under Title IX in a manner that is "incompatible with the [] will of Congress" (*Zivotofsky ex rel. Zivotofsky v Kerry*, 576 US 1, 2 [2015]).[7]

57. While leaning heavily on this novel theory, the Board did not even acknowledge its well-established obligations under state law (*see* Hulse affirmation, exhibit A; *infra* ¶¶ 35-40).

58. Indeed, there is no evidence in the record that the September 9 resolution—an abrupt rescission of previously-existing protections for transgender students[8]—represented "the result of respondent's collective judgment and deliberation" (*Appeal of Mathis & Dahlia*, 28 Educ Dept Rep 347 [Decision No. 12,132]).

59. There was no discussion of the issue of bathroom and locker room access either at the meetings immediately preceding the vote or at the September 9 meeting itself. Board members offered no comment when they voted unanimously to pass the resolution (*supra* ¶ 17; compare *Appeal of Kaufmann*, 57 Educ Dept Rep, Decision No. 17,250 [concluding that district decision to reorganize grades lacked a rational basis where "there [was] no evidence that respondent was engaged in any discussion, debate or further study," there was no discussion or debate prior to the Board vote, and the Board failed to explain why they elected to reverse their previous decision] with *Appeal of Parrish*, 32 Educ Dept Rep 261 [Decision No. 12,825] [upholding district decision to reorganize grades where the Board considered multiple alternatives, invited community members to sit on the committee charged with making recommendations, and "received and fully considered" a petition challenging the decision).

60. In fact, the Board did not comply with its own policy requiring that proposed

[7] *See also* Hulse affirmation, exhibit K, Letitia James & Dr. Betty A. Rosa, *Joint Statement of the Office of the Attorney General and the State Education Department Regarding Transgender Students' Rights* ["The EOs restrict the meaning of 'sex' in Title IX to exclude gender identity. The President cannot do that unilaterally. This would require an act of Congress—or, at minimum, notice-and-comment rulemaking. As previously observed by the State Education Department, these presidential statements of policy are legally ineffective."]).

[8] *See* Massapequa Public Schools Policy 0100 Non-Discrimination and Equal Opportunity [Nov. 18, 2021], available at https://boardpolicyonline.com/?b=massapequa&s=1393820.

policies be placed on the Board's agenda for a first reading to "giv[e] all persons interested in it an opportunity to express their views."[9] As a result, Mr. and Mrs. Doe were unable to speak up on behalf of their daughter, depriving the Board of an essential perspective on how the resolution would directly impact the students in its care (*supra* ¶ 20).

61. For all these reasons, the Boards actions here fail the "arbitrary and capricious" test under any version of the relevant analysis. The Board's stated justification for the September 9 resolution relies on an erroneous interpretation of Title IX and ignores the District's legal obligations under state law. There is no evidence in the record that the District engaged in the kind of "collective judgment and deliberation" that is the hallmark of well-reasoned decision-making. As such, the resolutions lack a rational basis and must be annulled as arbitrary and capricious (*see Pell*, 34 NY2d at 231; *Appeal of Kaufmann*, 57 Educ Dept Rep, Decision No. 17,250).

**WHEREFORE**, Petitioners respectfully pray for the following relief:

1. An immediate stay of the September 9, 2025, and September 18, 2025, resolutions pursuant to 8 NYCRR 276.1 and an order directing the District to allow Janie Doe to access the girls' bathrooms and locker rooms during the pendency of this appeal.

2. Annulment of the September 9, 2025, and September 18, 2025, resolutions pursuant to Education Law § 311.

3. An order pursuant to Education Law § 311 directing the District to allow all students to access the school facilities, including bathrooms and locker rooms, that most closely align with their gender identity.

4. Such other relief as the Commissioner deems just and proper.

[9] *See* Massapequa Public Schools Policy 2410 Adoption and Amendment of Policies [June 3, 2021], available at https://boardpolicyonline.com/?b=massapequa&s=1393868.

DATED: October 2, 2025

NEW YORK CIVIL LIBERTIES UNION FOUNDATION, by:

Emma Curran Donnelly Hulse
Gabriella Larios
Stefanie D. Coyle
Bobby Hodgson
New York Civil Liberties Union Foundation
*Attorneys for Petitioner*
125 Broad St., Fl. 19
New York, NY 10004
212-607-3344

TO: District Clerk's Office
Massapequa Union Free School District
4925 Merrick Road
Massapequa, NY 11758
c/o Pamela Alvarado

Appeals Coordinator
New York State Education Department
Office of Counsel
89 Washington Avenue, Room 148 EB
Albany, NY 12234

# VERIFICATION

STATE OF NEW YORK
COUNTY OF NASSAU ss.:

[redacted] being duly sworn, depose and say that she is the parent of [redacted] a minor, who is the subject of this proceeding; that she has read the annexed VERIFIED PETITION, and knows the contents thereof; that the same is true to the knowledge of deponent except as to the matters therein stated to be alleged upon information and belief, and as to those matters they believe it to be true.

[redacted]

Sworn to before me this 2nd day of October, 2025

Gabriella Lari

Notary Public

GABRIELLA LARIOS
Notary Public, State of New York
Reg. No. 02LA0028839
Qualified in Kings County
Commission Expires 09/16/2028

8:43am
RECEIVED
OCT 3 2025
MASSAPEQUA PUBLIC SCHOOLS
OFFICE OF THE SUPERINTENDENT

STATE OF NEW YORK
STATE EDUCATION DEPARTMENT

In the Matter of the Petition of

Jane and John Doe
ON BEHALF OF Janie Doe,

Petitioner,

from action of the Board of Education
of the Massapequa Union Free School District,

Respondent,

regarding discriminatory denial of equal access to facilities.

**AFFIDAVIT OF**
**[redacted]**
**("JANE DOE")**

Appeal No. ________

STATE OF NEW YORK )
COUNTY OF NASSAU ) ss:

I, [redacted] being duly sworn, depose and say that:

1. My name is [redacted]. I am going by "Jane Doe" in this appeal. My husband, [redacted], who is going by "John Doe," and I have filed this appeal on behalf of our daughter, [redacted] who is going by "Janie Doe."[1] I submit this affidavit in support of this appeal regarding discriminatory denial of equal access to facilities. I have personal knowledge of the facts stated below and would testify completely to those facts if called to do so.

2. John, Janie, and I live in Nassau County, New York.

3. Janie is a transgender girl. In December 2024, Janie came out as transgender to me and John. Janie asked us to use she/her pronouns when referring to her. As part of her social

[1] Jane Doe, John Doe, and Janie Doe are pseudonyms. My family is proceeding under pseudonym to protect our right to privacy and ourselves from discrimination, harassment, and violence, as well as retaliation for seeking to protect our rights.

Respondent is aware of our identities. Our names are included here in order to verify this affidavit. Pursuant to the Family Educational Rights and Privacy Act of 1974 (20 USC § 1232g), our child's name is protected personal identifying information. Any public version of this affidavit shall be redacted to protect our right to privacy.

transition, Janie wanted to wear makeup and gender-affirming clothing. We love our daughter and immediately supported her when she came out to us. We also helped our daughter socially transition by informing our friends and family that Janie is transgender.

4. Janie has been diagnosed with gender dysphoria and receives weekly counseling sessions to help her cope with the symptoms of her gender dysphoria. Part of her treatment plan to ease these symptoms includes being treated as a girl in all respects, including with respect to the use of the girls' restroom and locker room.

5. Janie first enrolled in the Massapequa Union Free School District (the "District") in 2020 to begin fourth grade.

6. Janie began this academic year in September 2025 as a ninth-grade student at Massapequa High School – Ames Campus.

7. On or around June 30, 2025, I spoke on the phone with Dr. Brian Trapani, Assistant Superintendent for Curriculum & Instruction, about changing the spelling of Janie's name and changing the gender marker in her school records to "F" for female so that Janie could use the girls' restrooms and locker room when she began ninth grade. At the time, Dr. Trapani assured me this request would be granted.

8. On or around September 1, I noticed Janie's name and gender marker had not yet been changed in her school records. I emailed Dr. Trapani to follow up on our June 30th conversation and to request that Janie's name and gender marker be updated. I also informed Dr. Trapani that I emailed Ms. Danielle Kennedy, the Executive Assistant Principal, to make sure that Janie's gym teachers knew that Janie would be using the girls' locker room on the first day of school.

9. On September 2, Dr. Trapani emailed me back and stated, "We will ensure that [Janie's] name is changed in PowerSchool today. Yes, the Ames administration and Physical Education teachers are aware that [Janie] will be utilizing the girl's locker room."

10. While I was grateful that Dr. Trapani finally made these changes to Janie's school records and confirmed that Janie would be able to use the girls' locker room, I was frustrated that these changes did not happen until the first day of school. When we spoke in June, I told Dr. Trapani that Janie's name and gender marker should be updated to reflect that she is a girl prior to beginning the school year in order to protect her privacy since she would be meeting new faculty at the Ames campus. I felt like Janie's privacy had been violated because her new teachers could see that her gender marker had recently been changed. I was worried that Janie's new teachers would single her out or treat her differently for being transgender.

11. On September 4, Dr. Trapani emailed me asking for a meeting the following day. We did not know what this meeting was about. On September 5, John and I met with Dr. Trapani, Dr. William Brennan, the Superintendent of Schools, and Ms. Tania Willman, the Principal of the Ames campus. We were told that Janie could use the girls' facilities for now, but that the Board of Education (the "Board") was discussing the matter because "there's a push and pull right now from a state perspective and a federal perspective." I asked whether Janie was still legally allowed to use the girls' locker room pursuant to state law. Dr. Brennan confirmed that is the current state law. At that meeting, Dr. Brennan also informed us that the district created a gender-neutral locker room over the summer and that Janie was welcome to use that locker room.

12. I was surprised and dismayed to hear Dr. Brennan suggest that Janie use gender-neutral facilities when he had just confirmed that Janie is legally allowed to use the girls' facilities.

I told Dr. Brennan that his suggestion that my daughter use a gender-neural locker room felt like Janie was being treated "separate but equal" due to being transgender.

13. After that meeting, we informed Janie that the District had created a gender-neutral locker room over the summer. We told her that she could use the gender-neutral locker room if that is where she felt safest, but we also confirmed that she had the right to use the girls' locker room. Janie was confused and anxious, but she reiterated that she wanted to keep using the girls' locker room because that is where she feels safest and most affirmed in her gender identity.

14. On September 10, John and I were called in to speak with Dr. Brennan and Dr. Trapani. They informed us that, the previous night, on September 9, the Board of Education (the "Board") passed a "Resolution to Adopt Title IX Board Policy" (the "Resolution"). The Resolution states that "the policy of the Massapequa Board of Education mandates that all students shall be required to use facilities-including restrooms and locker rooms-that correspond with the students' sex as defined under Title IX and federal law." It further states that "any student who requests an alternative arrangement shall be provided access to a designated gender-neutral facility, but shall not be permitted to use facilities designated for the opposite sex."

15. Under the terms of the Resolution, Janie would no longer be allowed to use the girls' restroom and locker room and would instead have to use the boys' or gender-neutral restroom and locker room.

16. John and I were devasted to learn that the Board had passed a resolution to strip our daughter of her civil rights under New York State law. We also felt it was wrong that we were not given advance notice that our daughter's use of facilities would be debated at the meeting. We wished we would have been given a chance to speak up and let the Board know the Resolution was wrong before they passed it.

17. When we broke the news about the Resolution to Janie, she immediately began crying. It was heartbreaking to watch my daughter feel targeted by the Board.

18. On the morning of Monday, September 22, John and I received a phone call from Dr. Brennan informing us that on Thursday, September 18, the Board passed an "Addendum Item – Title IX Resolution," which "directs the Superintendent of Schools to enforce and carry out all of the requirements" of the September 9 Resolution. Dr. Brennan told us that we would have to inform Janie about this second resolution ourselves.

19. Shortly after we spoke to Dr. Brennan, Janie called us from the school office. We informed her that the Board had passed a second resolution directing Dr. Brennan to enforce Board's new policy.

20. Janie called us again later that morning. She informed us that a security guard was posted outside the girls' locker room specifically looking for her and that she did not feel safe at school. We were horrified to learn that a security guard was asking for our daughter by name. Janie tried to go back to class, but she called us again shortly afterwards asking to be picked up from school.

21. On our way to pick Janie up from school, we asked to speak to Dr. Brennan with Janie present. John expressed that the District's actions were wrong and illegal.

22. On September 24, I emailed Ms. Kennedy to ask for a list of the gender-neutral restrooms at the Ames campus. Ms. Kennedy informed me that in addition to the restroom in the gender-neutral locker room, there is only one other gender-neural restroom. The gender-neutral restrooms are not located near Janie's classrooms.

23. On September 26, Janie used the gender-neutral locker for the first time. She came home from school and told me that she felt terrible using the gender-neutral locker room. As a

parent, it was devastating to hear that our daughter could not go to gym class without breaking down crying—all because the Board decided not to uphold her civil rights.

24. Since the Resolution was enacted on September 9, John and I have had trouble sleeping, and our entire household has been experiencing increased stress and anxiety. John even had to call in sick to work. We have both had to devote extra time to reassuring our daughter that she is loved over the past few weeks.

25. It is incredibly difficult to watch our daughter experience such distress due to the Board's discriminatory policy. Janie's education has already suffered since the Resolution was enacted. Her anxiety has been so severe that she asked me to unenroll her from her AP Human Geography class on September 17, the class she had been most excited for at the beginning of the school year. We are worried that our daughter's education will continue to be derailed if the Board's policy remains in place.

26. I chose to file this appeal because all transgender students in the District should be able to use the bathrooms and locker rooms that they feel safest and most affirmed in. As a parent, it is my duty to support and fight for my daughter's civil rights.

Dated: October 02, 2025

[redacted]

Sworn to me before this 2nd day of October, 2025

Notary Public

GABRIELLA LARIOS
Notary Public, State of New York
Reg. No. 02LA0028839
Qualified in Kings County
Commission Expires 09/16/2028

RECEIVED
OCT 3 2025
MASSAPEQUA PUBLIC SCHOOLS
OFFICE OF THE SUPERINTENDENT

STATE OF NEW YORK
STATE EDUCATION DEPARTMENT

---

In the Matter of the Petition of

Jane and John Doe
ON BEHALF OF Janie Doe,

Petitioner,

from action of the Board of Education
of the Massapequa Union Free School District,

Respondent,

regarding discriminatory denial of equal access to facilities.

**AFFIDAVIT OF [redacted] ("JANIE DOE")**

Appeal No. ________

---

STATE OF NEW YORK )
COUNTY OF NASSAU ) ss:

I, [redacted] being duly sworn, depose and say that:

1. My name is [redacted]. I am going by "Janie Doe" in this appeal.[1] My parents filed this appeal on my behalf. I submit this affidavit in support of this appeal regarding discriminatory denial of equal access to facilities. I have personal knowledge of the facts stated below and would testify completely to those facts if called to do so.

2. I am fourteen years old. I live with my parents in Nassau County, New York.

3. I am a girl who is transgender, which means I am a girl who was assigned male at birth. Growing up, I hated being a boy and never felt right in my body. I have struggled with anxiety, depression, self-harm, and suicidal ideation as a result of this incongruence. I came to

---

[1] Janie Doe is a pseudonym. My family is proceeding under pseudonym to protect our right to privacy and ourselves from discrimination, harassment, and violence, as well as retaliation for seeking to protect our rights.

Respondent is aware of my identity. My name is included here in order to verify this affidavit. Pursuant to the Family Educational Rights and Privacy Act of 1974 (20 USC § 1232g), my name is protected personal identifying information. Any public version of this affidavit shall be redacted to protect my right to privacy.

realize that I was transgender and began to recognize that I was experiencing symptoms of gender dysphoria.

4. In December 2024, I came out as transgender to my parents. I asked them to use she/her pronouns when referring to me. I also told them that I wanted to wear makeup and gender-affirming clothing. My parents have been incredibly supportive of me since I came out to them.

5. I have been diagnosed with gender dysphoria and receive weekly counseling sessions to help me cope with the symptoms of my gender dysphoria. Part of my treatment plan to ease these symptoms includes being treated as a girl in all respects, including with respect to the use of the girls' restroom and locker room. Being able to use girls' facilities makes me feel amazing. It alleviates my gender dysphoria because I am being treated like the girl that I am. When I feel affirmed in my gender identity, I experience less anxiety, which helps me focus on school and find enjoyment in the activities I love to do.

6. I have been a student in the Massapequa Union Free School District (the "District") since 2020, and I previously attended Berner Middle School.

7. I began my social transition at school during the eighth grade. I first came out to my guidance counselor. She was immediately supportive, and, with my consent, she emailed my teachers to inform them that I was transgender and that I used she/her pronouns. A few days after coming out to my guidance counselor, I began coming out to some of my classmates.

8. Middle school was incredibly difficult for me. I was misgendered constantly by fellow students and teachers. I also faced significant bullying from other students for being transgender. The bullying felt never-ending, and it made me really uncomfortable.

9. Because of my experiences in middle school, I was extremely anxious about beginning high school. Many of the same students I went to middle school with would also be

attending my high school. I spent many days over the summer crying because I dreaded the beginning of the school year.

10. On September 2, 2025, I began ninth grade at Massapequa High School – Ames Campus.

11. On the first day of school, my gym teacher asked me if I wanted to use gender-neutral or girls' locker room. I told him that I wanted to use the girls' locker room. The gym teacher then let me use girls' locker room with no issues. I selected a locker in the girls' locker room and felt affirmed in my gender identity because I was being treated like other girls.

12. On September 5, my parents told me that they met with the Superintendent of Schools, the Assistant Superintendent, and the Principal of the Ames campus, who informed them that the school created a gender-neutral locker room over the summer. My parents told me that I could use the gender-neutral locker room if that is where I felt safest, but they also confirmed that I had the right to use the girls' locker room. I was confused since I was already using the girls' locker room at school. I also began feeling anxious and scared that I might be forced to use facilities I did not feel safe using.

13. On September 10, my nightmare became a reality. My parents told me that the Board of Education (the "Board") passed a policy on September 9 that would prohibit me from using the girls' restroom and locker room and would require me to use the boys' or gender-neutral restroom and locker room.

14. I immediately started crying when I found out about the policy. I felt like my rights as a transgender student had been violated. I quickly began feeling suicidal. My anxiety and depression have worsened since learning about the policy because I feel like I am being bullied by the Board directly.

15. On the morning of September 22, I went to the school office to call my parents, who informed me that the Board passed another resolution on September 18 directing the Superintendent to enforce the District's September 9 policy.

16. That same morning, a security guard prevented me from using the girls' locker room. When I arrived at the girls' locker room for gym class, the security guard asked me if I was Janie Doe. I said yes. She responded, "with all due respect, I can't let you in here," and said I could not use the girls' locker room and instead had to use the boys' or gender-neutral locker room.

17. After being turned away from the girls' locker room, I went to the school guidance office to call my parents. I did not feel comfortable going to gym class, so I stayed in the office for the remainder of the period. I tried to be strong and make it through the rest of the school day, but I felt nauseated during my science class. I went to the guidance counselor's office, called my parents, and asked them to pick me up. I did not feel safe at school.

18. Since I started high school, I have been avoiding going to the bathroom at school due my fears of harassment from other students and school officials. I have spent my school days feeling physically uncomfortable from having to "hold it" when I needed to use the bathroom. I do not go to the bathroom even when I have to because I am scared about outing myself as transgender to teachers and classmates.

19. The Board policy says that I can use gender-neutral bathrooms, but I do not feel comfortable using those. The gender-neutral bathrooms are further away from my classrooms than the girls' bathrooms, so I would have to cross the whole building to use the bathroom. In order to use the gender-neural bathroom, I would have to miss time in class. I do not want to risk getting disciplined for being late to one of my classes. It feels stigmatizing and embarrassing to be told to

use the gender-neutral bathrooms. I would have to explain to my teachers and other students that I cannot use the girls' bathroom like other girls because I am transgender.

20. On September 26, I used the gender-neutral locker room for the first time. This was a humiliating and isolating experience. It was depressing, and I cried before my gym class. Being forced to use the gender-neutral locker room makes my gender dysphoria worse because it shows me that people are not willing to treat me like a girl and allow me to use the facilities that I have the right to use.

21. I have been so upset and scared by this targeting by the Board and the surveillance of my restroom and locker room use that I dread going to school. I have repeatedly told my parents that I do not want to go to school.

22. Since learning about the Board policy, I have felt all-consuming stress and anxiety because I did not know if, how, or when the Board would enforce the policy and prevent me from using the girls' facilities.

23. I have been unable to concentrate in school as a result of this stress and anxiety. On September 17, I made the difficult decision to drop my AP Human Geography class, which is one of the most challenging classes offered at my school, even though I had been excited for it because I did not feel like I would be able to focus enough.

24. I am also struggling to enjoy my extracurricular activities. This week, I did not attend Model UN because I do not feel safe at school and want to limit the time I spend there.

25. I am also struggling to enjoy activities outside of school. For example, I am a member of the Long Island Youth Orchestra, a competitive youth orchestra program that I love participating in. I did not go to my most recent rehearsal because I cannot focus on anything due to my stress about school.

26. My parents have filed this appeal on my behalf because they support my right to use the girls' bathrooms and locker rooms. I also want other transgender students in the District to be able to use the bathrooms and locker rooms that align with their gender identity because no one should face discrimination for being who they are.

Dated: October 2, 2025

[redacted]

Sworn to me before this 2nd day of October, 2025

Notary Public

GABRIELLA LARIOS
Notary Public, State of New York
Reg. No. 02LA0028839
Qualified in Kings County
Commission Expires 09/16/2028

STATE OF NEW YORK
STATE EDUCATION DEPARTMENT

5:43pm RECEIVED
OCT 3 2025
MASSAPEQUA PUBLIC SCHOOLS
OFFICE OF THE SUPERINTENDENT

In the Matter of the Petition of

Jane and John Doe,
ON BEHALF OF Janie Doe

Petitioners,

from action of the Board of Education
of the Massapequa Union Free School District,

Respondent,

Appeal No.: ________

regarding discriminatory denial of equal access to facilities.

**AFFIRMATION OF EMMA CURRAN DONNELLY HULSE IN SUPPORT OF VERIFIED PETITION**

EMMA CURRAN DONNELLY HULSE, an attorney duly admitted to practice before the courts of New York, affirms under penalty of perjury pursuant to CPLR § 2106, as follows:

1. I am an Attorney with the Education Policy Center at the New York Civil Liberties Union Foundation ("NYCLU") for the Petitioners in the above-entitled matter and am fully familiar with the facts and circumstances of this case.

2. I am not a party to this action and am in good standing in the Courts of the State of New York.

3. A true and correct copy of the September 9, 2025 Regular Board Meeting Agenda for the Massapequa Union Free School District Board of Education (the "Board" or the "District"), including the Resolution, is included with this submission as **Exhibit A.**

4. A true and correct copy of President Donald Trump's January 20, 2025 Executive Order 14168, entitled "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," is included with this submission as **Exhibit B**.
5. A true and correct copy of the meeting minutes of the September 9, 2025 Regular Board Meeting is included with this submission as **Exhibit C**.
6. A true and correct copy of the meeting minutes of the July 2, 2025 Organizational Meeting is included with this submission as **Exhibit D**.
7. A true and correct copy of the meeting minutes of the July 2, 2025 Regular Board Meeting is included with this submission as **Exhibit E**.
8. A true and correct copy of the meeting minutes of the July 31, 2025 Regular Board Meeting is included with this submission as **Exhibit F**.
9. A true and correct copy of the meeting minutes of the August 7, 2025 Regular Board Meeting is included with this submission as **Exhibit G**.
10. A true and correct copy of the meeting minutes of the September 18, 2025 Special Board Meeting is included with this submission as **Exhibit H**.
11. A true and correct copy of the New York State Education Department's 2023 Legal Update document entitled "Creating a Safe, Supportive, and Affirming School Environment for Transgender and Gender Expansive Students: 2023 Legal Update and Best Practices," also available at https://www.nysed.gov/sites/default/files/programs/student-support-services/creating-a-safe-supportive-and-affirming-school-environment-for-transgender-and-gender-expansive-students.pdf (last accessed October 1, 2025) is included with this submission as **Exhibit I**.

12. A true and correct copy of the New York State Education Department's July 2015 guidance document entitled "Guidance to School Districts for Creating a Safe and Supportive School Environment for Transgender and Gender Nonconforming Students," also available at available at https://www.p12.nysed.gov/dignityact/documents/Transg_GNCGuidanceFINAL.pdf (last accessed October 1, 2025) is included with this submission as **Exhibit J**.

13. A true and correct copy of Letitia James & Dr. Betty A. Rosa's February 5, 2025 "Joint Statement of the Office of the Attorney General and the State Education Department Regarding Transgender Students' Rights", also available at https://www.nysed.gov/sites/default/files/nysed-oag-joint-statement-regarding-transgender-students.pdf (last accessed October 1, 2025) is included with this submission as **Exhibit K**.

WHEREFORE, the Petitioner respectfully requests that the Commissioner find for the Petitioner, stay and annul the September 9, 2025 and September 18, 2025 resolutions, and issue an order pursuant to Education Law § 311 directing the District to allow all students to access the school facilities, including bathrooms and locker rooms, that most closely align with their gender identity, and any other such relief as the Commissioner deems just and proper.

Dated: October 2, 2025

New York, NY

Emma Curran Donnelly Hulse

Exhibit A

Massapequa Public Schools
Massapequa, NY

Board of Education

September 9, 2025
6:00 PM

Our mission is to educate all students to their highest level of academic potential and to teach them the skills and knowledge to become capable, creative and responsible members of our society. Responsibility for learning must be shared by all – children, parents, teachers and community.

Students who desire to comment at a Board meeting should make their presence known to the District Clerk prior to the beginning of the meeting so that the Board President can consider allowing the comments to be made at the beginning of the meeting.

The Board of Education meeting will be called to order at the time listed above in the Board of Education Room. It is expected that the Board will move directly into Executive Session for the purpose of discussing matters appropriate under the Open Meetings Law. Following the Executive Session the Board will reconvene in the Board Room at approximately 8 p.m. unless otherwise noted.

I/ **Call to Order**

1} **Roll Call**

II/ **Minutes Approval**

1} Board - Work Session - Jul 31, 2025 6:00 PM

2} Board - Regular Meeting - Aug 7, 2025 6:00 PM

III/ **Financial Reports**

1} Treasurer's Report July

IV/ **Personnel**

1} Personnel - Certificated

2} Certificated Appointments

4} Fall Coaches 2025

5} Salary Changes

6} Web Liaisons 2025-26

7} Web Master 2025-26

V/ **Personnel - Non-Certificated - Appointments**

1} Support Staff

2} Personnel - Non-Certificated

3} Accompanists

4} Berner Musical Personnel & Stipends

VI/ **Informational Items**

1} Discussion of Board Committee Chairpeople

2} Superintendent's Update -Vision, Mission, Profile of a Massapequa Learner & Leader Update

VII/ **Resolutions**

1} Resolved that the Board of Education approve the IEP recommendations as per the attached.

2} Resolved that the Board of Education approve the Consultant Contracts listed below and authorizes the Board President to sign said contracts.

| Name | Services | Effective Dates |
|---|---|---|
| Commack UFSD | Tuition | 9/1/25-6/30/26 |
| Denise Fleming | Related Services | 7/1/25-6/30/26 |

3} RESOLVED, that the Board of Education hereby revises second October meeting date from October 23, 2025 to October 21, 2025.

4} RESOLVED that the Board of Education accept the internal audit for the 2025-26 fiscal year performed by Cerini & Associates, LLP and accept the attached corrective action plan, as reviewed at the last audit committee meeting.

5} RESOLVED that the Board of Education authorizes funding of Financial Reserves as documented in the attached memorandum.

6} RESOLVED that the Board of Education authorize the SEQRA to include the Grounds Operation Center related to our bond referendum as per the attached.

7} Resolved that the Board of Education approve the agreement with SED and authorizes the Board President to execute said agreement.

8} RESOLVED that the Board of Education appoint the community residents listed to serve on its District Wide Safety Committee for the 2025-2026 school year.

Justin McCaffrey
Steven D'Ulisse
David Gjodesen
Kevin Colfer

Rose Stein
Jeanine Caramore

9} RESOLVED that the Board of Education approves the Memorandum of Agreement for a successor collective bargaining agreement between the Massapequa Board of Education and the Massapequa Federation of Teachers (Secretarial Unit) for the period July 1, 2023 to June 30, 2028 and authorizes the Board President to sign said agreement.

10} RESOLVED that the Board of Education approve the Consultant contract listed below and authorizes the Board President to execute said contract.

| | | |
|---|---|---|
| Helen Tricarico | Adult Education Instructor | 09/10/2025-6/30/2026 |

11} RESOLVED that the Board of Education approve the Memorandum of Understanding agreements listed below and authorizes the Board President to sign said agreements.

| | |
|---|---|
| SUNY Cortland | 08/28/2025- 06/30/2026 |
| Marist | 09/01/2025-06/30/2026 |
| SUNY Old Westbury | 08/29/2025-06/30/2026 |
| SUNY Oneota | 08/26/2025-06/30/2026 |
| SUNY Oswego | 09/01/2025-06/30/2026 |
| SUNY Potsdam | 09/01/2025-06/30/2026 |
| Touro University | 09/01/2025-06/30/2026 |

12} RESOLVED that the Board of Education appoints Kerry Wachter as a voting delegate and Danielle Ocuto as an alternate delegate to represent the Massapequa Union Free School District Board of Education at the Annual Business Meeting to be held virtually on October 16, 2025.

13} RESOLVED, that the Board of Education approve the Interim Policy: Student Use of Internet-Enabled Devices as per the attached.

14} <u>RESOLUTION OF THE MASSAPEQUA BOARD OF EDUCATION</u>

WHEREAS, the Massapequa Board of Education is committed to providing a safe, respectful,

and supportive educational environment for all students; and

WHEREAS, Title IX of the Education Amendments of 1972 prohibits discrimination based on sex in education programs and activities that receive federal financial assistance; and

WHEREAS, Title IX states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]"; and

WHEREAS, federal courts have determined "ignoring fundamental biological truths between the two sexes deprives women and girls of meaningful access to educational facilities." *Tennessee v. Cardona*, 24-cv-00072 at 73 (E.D. Ky. 2024); *Kansas v. U.S. Dept. of Education*, 24-cv-04041 at 23 (D. Kan. 2024) (highlighting "Congress' goals of protecting biological women in education"); and

WHEREAS, on January 20, 2025, President Donald J. Trump issued Executive Order 14168, "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government"; and

WHEREAS, Executive Order 14168 states: "[i]t is the policy of the United States to recognize two sexes, male and female"; " 'Sex' shall refer to an individual's immutable biological classification as either male or female"; and " 'Sex' is not a synonym for and does not include the concept of 'gender identity.' "; and

WHEREAS, Executive Order 14168 states that "[f]ederal funds shall not be used to promote gender ideology" and "each agency shall assess grant conditions and grantee preferences and ensure grant funds do not promote gender ideology."; and

WHEREAS, Executive Order 14168 stated that the prior Administration's Title IX position regarding the Supreme Court's decision in *Bostock v. Clayton County* (2020) "is legally untenable and has harmed women"; and

WHEREAS, Executive Order 14168 further directed the Attorney General to "immediately issue guidance to agencies to correct the misapplication of the Supreme Court's decision in *Bostock v. Clayton County* (2020) to sex-based distinctions in agency activities" and "issue guidance and assist agencies in protecting sex-based distinctions, which are explicitly permitted under Constitutional and statutory precedent."; and

WHEREAS, the Board recognizes its duties, obligations, and responsibilities to uphold federal law and to safeguard the privacy, dignity, and safety of its students; and

WHEREAS, the Board recognizes that noncompliance with federal law, and in particular Title IX, may result in statutory liability, the loss of federal funding, and other federal enforcement action; and

WHEREAS, the District will continue to provide reasonable accommodations, including access to gender-neutral facilities, to ensure that all students' needs are respectfully addressed; and

NOW, THEREFORE, BE IT RESOLVED that the policy of the Massapequa Board of Education mandates that all students shall be required to use facilities-including restrooms and locker rooms-that correspond with the students' sex as defined under Title IX and federal law.

BE IT FURTHER RESOLVED that any student who requests an alternative arrangement shall be provided access to a designated gender-neutral facility, but shall not be permitted to use facilities designated for the opposite sex; and

BE IT FURTHER RESOLVED that the Superintendent of Schools is hereby directed to revise district policies, procedures, and communications to reflect full compliance with Title IX and federal law; to provide appropriate staff training; and to ensure transparency in how the policy will be implemented and enforced

15} RESOLVED, that the Board of Education hereby authorizes its special counsel, Nicholas Rigano and Holtzman Vogel, to commence litigation in Federal and/or State court for declaratory relief regarding potential Federal civil rights actions.

**VIII/ <u>Correspondence</u>**

1} Correspondence was received from Mr. Dan, Michelle Santoro and Joseph Cangeleri.

**IX/ <u>Advocacy Liaison Updates</u>**

1} Advocacy Liaison Update - Mrs. Ocuto

**X/ <u>Updates from the Board of Education</u>**

1} Update from the Board of Education

The Board of Education allows time at the conclusion of its regular meetings for comments from residents in attendance. Please note that any person wishing to speak during this time shall comply with all provisions of Board policy. Although a total of thirty minutes is allowed for comments, the Board President has discretion to adjust the total time. We remind you to keep your comments to three minutes and to conduct yourself in a respectful manner. Please address school matters only and refrain from addressing topics related to personnel matters or individual students. Such concerns should be discussed privately with the Superintendent or administrator at an appropriate

time. The Board is here to listen and cannot provide immediate feedback or engage in open dialogue. Any necessary follow-up will be noted and provided at a later date.

MASSAPEQUA SCHOOL DISTRICT WEB-SITE – www.msd.k12.ny.us

This document is scheduled to be published in the Federal Register on 01/30/2025 and available online at https://federalregister.gov/d/2025-02090, and on https://govinfo.gov

Exhibit B

EXECUTIVE ORDER

14168

- - - - - - -

DEFENDING WOMEN FROM GENDER IDEOLOGY EXTREMISM AND RESTORING BIOLOGICAL TRUTH TO THE FEDERAL GOVERNMENT

By the authority vested in me as President by the Constitution and the laws of the United States of America, including section 7301 of title 5, United States Code, it is hereby ordered:

Section 1. Purpose. Across the country, ideologues who deny the biological reality of sex have increasingly used legal and other socially coercive means to permit men to self-identify as women and gain access to intimate single-sex spaces and activities designed for women, from women's domestic abuse shelters to women's workplace showers. This is wrong. Efforts to eradicate the biological reality of sex fundamentally attack women by depriving them of their dignity, safety, and well-being. The erasure of sex in language and policy has a corrosive impact not just on women but on the validity of the entire American system. Basing Federal policy on truth is critical to scientific inquiry, public safety, morale, and trust in government itself.

This unhealthy road is paved by an ongoing and purposeful attack against the ordinary and longstanding use and understanding of biological and scientific terms, replacing the immutable biological reality of sex with an internal, fluid, and subjective sense of self unmoored from biological facts. Invalidating the true and biological category of "woman" improperly transforms laws and policies designed to protect sex-based opportunities into laws and policies that undermine them, replacing longstanding, cherished legal rights and values with an identity-based, inchoate social concept.

Accordingly, my Administration will defend women's rights and protect freedom of conscience by using clear and accurate language and policies that recognize women are biologically female, and men are biologically male.

Sec. 2. Policy and Definitions. It is the policy of the United States to recognize two sexes, male and female. These sexes are not changeable and are grounded in fundamental and incontrovertible reality. Under my direction, the Executive Branch will enforce all sex-protective laws to promote this reality, and the following definitions shall govern all Executive interpretation of and application of Federal law and administration policy:

(a) "Sex" shall refer to an individual's immutable biological classification as either male or female. "Sex" is not a synonym for and does not include the concept of "gender identity."

(b) "Women" or "woman" and "girls" or "girl" shall mean adult and juvenile human females, respectively.

(c) "Men" or "man" and "boys" or "boy" shall mean adult and juvenile human males, respectively.

(d) "Female" means a person belonging, at conception, to the sex that produces the large reproductive cell.

(e) "Male" means a person belonging, at conception, to the sex that produces the small reproductive cell.

(f) "Gender ideology" replaces the biological category of sex with an ever-shifting concept of self-assessed gender identity, permitting the false claim that males can identify as and thus become women and vice versa, and requiring all institutions of society to regard this false claim as true. Gender ideology includes the idea that there is a vast spectrum of genders that are disconnected from one's sex. Gender

ideology is internally inconsistent, in that it diminishes sex as an identifiable or useful category but nevertheless maintains that it is possible for a person to be born in the wrong sexed body.

(g) "Gender identity" reflects a fully internal and subjective sense of self, disconnected from biological reality and sex and existing on an infinite continuum, that does not provide a meaningful basis for identification and cannot be recognized as a replacement for sex.

Sec. 3. Recognizing Women Are Biologically Distinct From Men. (a) Within 30 days of the date of this order, the Secretary of Health and Human Services shall provide to the U.S. Government, external partners, and the public clear guidance expanding on the sex-based definitions set forth in this order.

(b) Each agency and all Federal employees shall enforce laws governing sex-based rights, protections, opportunities, and accommodations to protect men and women as biologically distinct sexes. Each agency should therefore give the terms "sex", "male", "female", "men", "women", "boys" and "girls" the meanings set forth in section 2 of this order when interpreting or applying statutes, regulations, or guidance and in all other official agency business, documents, and communications.

(c) When administering or enforcing sex-based distinctions, every agency and all Federal employees acting in an official capacity on behalf of their agency shall use the term "sex" and not "gender" in all applicable Federal policies and documents.

(d) The Secretaries of State and Homeland Security, and the Director of the Office of Personnel Management, shall implement changes to require that government-issued identification documents, including passports, visas, and Global

Entry cards, accurately reflect the holder's sex, as defined under section 2 of this order; and the Director of the Office of Personnel Management shall ensure that applicable personnel records accurately report Federal employees' sex, as defined by section 2 of this order.

(e) Agencies shall remove all statements, policies, regulations, forms, communications, or other internal and external messages that promote or otherwise inculcate gender ideology, and shall cease issuing such statements, policies, regulations, forms, communications or other messages. Agency forms that require an individual's sex shall list male or female, and shall not request gender identity. Agencies shall take all necessary steps, as permitted by law, to end the Federal funding of gender ideology.

(f) The prior Administration argued that the Supreme Court's decision in *Bostock v. Clayton County* (2020), which addressed Title VII of the Civil Rights Act of 1964, requires gender identity-based access to single-sex spaces under, for example, Title IX of the Educational Amendments Act. This position is legally untenable and has harmed women. The Attorney General shall therefore immediately issue guidance to agencies to correct the misapplication of the Supreme Court's decision in *Bostock v. Clayton County* (2020) to sex-based distinctions in agency activities. In addition, the Attorney General shall issue guidance and assist agencies in protecting sex-based distinctions, which are explicitly permitted under Constitutional and statutory precedent.

(g) Federal funds shall not be used to promote gender ideology. Each agency shall assess grant conditions and grantee preferences and ensure grant funds do not promote gender ideology.

Sec. 4. Privacy in Intimate Spaces. (a) The Attorney General and Secretary of Homeland Security shall ensure that males are not detained in women's prisons or housed in women's detention centers, including through amendment, as necessary, of Part 115.41 of title 28, Code of Federal Regulations and interpretation guidance regarding the Americans with Disabilities Act.

(b) The Secretary of Housing and Urban Development shall prepare and submit for notice and comment rulemaking a policy to rescind the final rule entitled "Equal Access in Accordance with an Individual's Gender Identity in Community Planning and Development Programs" of September 21, 2016, 81 FR 64763, and shall submit for public comment a policy protecting women seeking single-sex rape shelters.

(c) The Attorney General shall ensure that the Bureau of Prisons revises its policies concerning medical care to be consistent with this order, and shall ensure that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex.

(d) Agencies shall effectuate this policy by taking appropriate action to ensure that intimate spaces designated for women, girls, or females (or for men, boys, or males) are designated by sex and not identity.

Sec. 5. Protecting Rights. The Attorney General shall issue guidance to ensure the freedom to express the binary nature of sex and the right to single-sex spaces in workplaces and federally funded entities covered by the Civil Rights Act of 1964. In accordance with that guidance, the Attorney General, the Secretary of Labor, the General Counsel and Chair of the Equal Employment Opportunity Commission, and each other agency

head with enforcement responsibilities under the Civil Rights Act shall prioritize investigations and litigation to enforce the rights and freedoms identified.

Sec. 6. Bill Text. Within 30 days of the date of this order, the Assistant to the President for Legislative Affairs shall present to the President proposed bill text to codify the definitions in this order.

Sec. 7. Agency Implementation and Reporting. (a) Within 120 days of the date of this order, each agency head shall submit an update on implementation of this order to the President, through the Director of the Office of Management and Budget. That update shall address:

(i) changes to agency documents, including regulations, guidance, forms, and communications, made to comply with this order; and

(ii) agency-imposed requirements on federally funded entities, including contractors, to achieve the policy of this order.

(b) The requirements of this order supersede conflicting provisions in any previous Executive Orders or Presidential Memoranda, including but not limited to Executive Orders 13988 of January 20, 2021, 14004 of January 25, 2021, 14020 and 14021 of March 8, 2021, and 14075 of June 15, 2022. These Executive Orders are hereby rescinded, and the White House Gender Policy Council established by Executive Order 14020 is dissolved.

(c) Each agency head shall promptly rescind all guidance documents inconsistent with the requirements of this order or the Attorney General's guidance issued pursuant to this order, or rescind such parts of such documents that are inconsistent in such manner. Such documents include, but are not limited to:

(i) "The White House Toolkit on Transgender Equality";

(ii) the Department of Education's guidance documents including:

(A) "2024 Title IX Regulations: Pointers for Implementation" (July 2024);

(B) "U.S. Department of Education Toolkit: Creating Inclusive and Nondiscriminatory School Environments for LGBTQI+ Students";

(C) "U.S. Department of Education Supporting LGBTQI+ Youth and Families in School" (June 21, 2023);

(D) "Departamento de Educación de EE.UU. Apoyar a los jóvenes y familias LGBTQI+ en la escuela" (June 21, 2023);

(E) "Supporting Intersex Students: A Resource for Students, Families, and Educators" (October 2021);

(F) "Supporting Transgender Youth in School" (June 2021);

(G) "Letter to Educators on Title IX's 49th Anniversary" (June 23, 2021);

(H) "Confronting Anti-LGBTQI+ Harassment in Schools: A Resource for Students and Families" (June 2021);

(I) "Enforcement of Title IX of the Education Amendments of 1972 With Respect to Discrimination Based on Sexual Orientation and Gender Identity in Light of Bostock v. Clayton County" (June 22, 2021);

(J) "Education in a Pandemic: The Disparate Impacts of COVID-19 on America's Students" (June 9, 2021); and

(K) "Back-to-School Message for Transgender Students from the U.S. Depts of Justice, Education, and HHS" (Aug. 17, 2021);

(iii) the Attorney General's Memorandum of March 26, 2021 entitled "Application of *Bostock v. Clayton County* to Title IX of the Education Amendments of 1972"; and

(iv) the Equal Employment Opportunity Commission's "Enforcement Guidance on Harassment in the Workplace" (April 29, 2024).

Sec. 8. General Provisions. (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

(d) If any provision of this order, or the application of any provision to any person or circumstance, is held to be invalid, the remainder of this order and the application of its

provisions to any other persons or circumstances shall not be affected thereby.

THE WHITE HOUSE,

January 20, 2025.

[FR Doc. 2025-02090 Filed: 1/29/2025 11:15 am; Publication Date: 1/30/2025]

Exhibit C

Massapequa Public Schools
Massapequa, NY

Board of Education

September 9, 2025
6:00 PM

**Call to Order**

Present:

| Attendee Name | Title | Status | Arrived |
|---|---|---|---|
| Kerry Wachter | President | Present | |
| Jeanine Caramore | Vice President | Present | |
| Cher Lepre | Secretary | Present | |
| Christopher Brooks | Trustee | Present | |
| Danielle Ocuto | Trustee | Present | |
| William Brennan | Superintendent of Schools | Present | |
| Jordan McCaw | Assistant Superintendent | Present | |
| Ryan Ruf | Assistant Superintendent | Present | |
| Brian J. Trapani | Assistant Superintendent | Present | |
| Bryan R. Piotrowski | Assistant Superintendent | Present | |
| Michelle Walsh | Assistant Superintendent | Present | |
| Yvonne Knott | Assistant Superintendent | Present | |
| Pamela Alvarado | District Clerk | Present | |
| Greg Gillen | School Attorney | Present | |

**Minutes Approval**

1. Thursday, July 31, 2025

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

2. Thursday, August 07, 2025

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

**Financial Reports**

1 Treasurer's Report July

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

**Personnel**

1 Personnel - Certificated

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

2 Certificated Appointments

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

4 Fall Coaches 2025

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

5 Salary Changes

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

6 Web Liaisons 2025-26

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

7 Web Master 2025-26

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

**Personnel - Non-Certificated - Appointments**

1 Support Staff

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

2 Accompanists

Accompanists 2025-26

Craig Coyle
Melissa Coyle
Nancy Deutsch
Molly Guarton
Carolyn Lopardo
Alice Marques

Brian Sweeny
John Paul West

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

3 Berner Musical Personnel & Stipends

| | |
|---|---|
| Kathryn Pearsall | Musical Director |
| Christina Simon | Vocal Director |
| Siobhan Healy | Production Assistant |
| Jason Cavanaugh | Stage Crew |
| Danielle Coutieri | Choreographer |
| Erik Chocianowski | Set Builder (consultant contract) |
| Allison Clemente | Scenic Painting |

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

**Informational Items**

1 Discussion of Board Committee Chairpeople

Discussion of Board Committee Chairpeople - Budget & Finance Committee, Buildings & Grounds Committee and Student Advisory Committee.
The Board established its advisory committee chairpersons for the 2025-2026 school year as follows:

Athletic Advisory Committee Chairperson: Christopher Brooks
Audit Committee Chairperson: Kerry Wachter
Budget Finance Committee: Cher Lepre
Buildings & Grounds Committee: Danielle Ocuto
Student Advisory Committee Representative: Jeanine Caramore/ Danielle Ocuto

The Board agreed that each member would alternate and attend Athletic Advisory Committee meetings throughout the year.

| | |
|---|---|
| **RESULT:** | **DISCUSSED** |

2 Superintendent's Update -Vision, Mission, Profile of a Massapequa Learner & Leader Update

Dr. Brennan began his update with the District Vision & Leadership Update by

expressing his excitement in seeing everyone moving in the same direction, particularly with the release of the Mission and Vision video release on YouTube. He reminded everyone that this is the kind of work we want to focus on and of his desire to continue building on that momentum.
He went on to recall how as part of the Superintendent's Conference Day, he shared a piece of this vision and mission work: the "Profile of the Massapequa Learning Leader." Dr. Brennan explained that while it may look like just a document, it's a living, breathing representation of what's happening across Massapequa schools-from kindergarten through 12th grade. He maintained that the profile reflects the Massapequa experience and the competencies that define it.
Dr. Brennan stated that the goal this year is to scale this work, deepen it, and explore it across the K-12 continuum. There will be collaboration with faculty, staff, and community members to enhance student experiences. Looking ahead, he mentioned they may even redefine what a Massapequa diploma means-moving beyond standardized tests to a broader concept of being "Massapequa Made" and future-ready.
Playground Project Update
He also shared about one of the most exciting recent developments, the elementary school playground renovations. This was a massive undertaking, and he recognized the incredible work done by the team. Dr. Brennan gave details on his visit to Birch Lane Elementary School with Mr. Ruff and the Board, noting the transformation was remarkable-even with trucks still on site and flooring not yet complete.
Dr. Brennan said since visiting all the schools, the feedback has been phenomenal. The students absolutely love the new playgrounds. A question came up about how the designs were chosen for each school, since they're all different. The answer given by Mr. Ruf was "each building's administration, teachers, parents, and even students were involved in the design process." The goal was for each playground to reflect the unique character of its school, and it has been deemed a success so far.
Dr. Brennan wrapped up his update by thanking everyone for continued support and enthusiasm.

| | |
|---|---|
| **RESULT:** | **DISCUSSED** |

**Resolutions**

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: IEP Approvals

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
Resolved that the Board of Education approve the IEP recommendations as per the attached.

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Consultant Approval

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
Resolved that the Board of Education approve the Consultant Contracts listed below and authorizes the Board President to sign said contracts.

| Name | Services | Effective Dates |
|---|---|---|
| Commack UFSD | Tuition | 9/1/25-6/30/26 |
| Denise Fleming 6/30/26 | Related Services | 7/1/25- |

I Personnel - Non-Certificated

| | |
|---|---|
| **RESULT:** | **ADOPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Board Meeting Date Change

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
RESOLVED, that the Board of Education hereby revises second October meeting date from October 23, 2025 to October 21, 2025.

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Internal Audit for the 2025-26 Fiscal Year

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :

RESOLVED that the Board of Education accept the internal audit for the 2025-26 fiscal year performed by Cerini & Associates, LLP and accept the attached corrective action plan, as reviewed at the last audit committee meeting.

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Financial Reserves

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :

RESOLVED that the Board of Education authorizes funding of Financial Reserves as documented in the attached memorandum.

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: SEQRA - Grounds Operation Center

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :

RESOLVED that the Board of Education authorize the SEQRA to include the Grounds Operation Center related to our bond referendum as per the attached.

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: SED-Transportation Contract Amendment

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :

Resolved that the Board of Education approve the agreement with SED and authorizes the Board President to execute said agreement.

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: District Wide Safety Committee

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :

RESOLVED that the Board of Education appoint the community residents listed to serve on its District Wide Safety Committee for the 2025-2026 school year.

Justin McCaffrey
Steven D'Ulisse
David Gjodesen
Kevin Colfer
Rose Stein
Jeanine Caramore

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Memorandum of Agreement

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
RESOLVED that the Board of Education approves the Memorandum of Agreement for a successor collective bargaining agreement between the Massapequa Board of Education and the Massapequa Federation of Teachers (Secretarial Unit) for the period July 1, 2023 to June 30, 2028 and authorizes the Board President to sign said agreement.

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Adult Education Instructor

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
RESOLVED that the Board of Education approve the Consultant contract listed below and authorizes the Board President to execute said contract.

| | | |
|---|---|---|
| Helen Tricarico | Adult Education Instructor | 09/10/2025-6/30/2026 |

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Memorandum of Understanding

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
RESOLVED that the Board of Education approve the Memorandum of Understanding

agreements listed below and authorizes the Board President to sign said agreements.

| | |
|---|---|
| SUNY Cortland | 08/28/2025- 06/30/2026 |
| Marist | 09/01/2025-06/30/2026 |
| SUNY Old Westbury | 08/29/2025-06/30/2026 |
| SUNY Oneota | 08/26/2025-06/30/2026 |
| SUNY Oswego | 09/01/2025-06/30/2026 |
| SUNY Potsdam | 09/01/2025-06/30/2026 |
| Touro University | 09/01/2025-06/30/2026 |

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Addendum Item - NYSSBA Delegate

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
RESOLVED that the Board of Education appoints Kerry Wachter as a voting delegate and Danielle Ocuto as an alternate delegate to represent the Massapequa Union Free School District Board of Education at the Annual Business Meeting to be held virtually on October 16, 2025.

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Distraction Free Schools - Interim Cell Phone Policy

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
RESOLVED, that the Board of Education approve the Interim Policy: Student Use of Internet-Enabled Devices as per the attached.

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Resolution to Adopt Title IX Board Policy

September 9, 2025

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :

RESOLUTION OF THE MASSAPEQUA BOARD OF EDUCATION

WHEREAS, the Massapequa Board of Education is committed to providing a safe, respectful, and supportive educational environment for all students; and

WHEREAS, Title IX of the Education Amendments of 1972 prohibits discrimination based on sex in education programs and activities that receive federal financial assistance; and

WHEREAS. Title IX states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]"; and

WHEREAS, federal courts have determined "ignoring fundamental biological truths between the two sexes deprives women and girls of meaningful access to educational facilities." *Tennessee v. Cardona*, 24-cv-00072 at 73 (E.D. Ky. 2024); *Kansas v. U.S. Dept. of Education*, 24-cv-04041 at 23 (D. Kan. 2024) (highlighting "Congress' goals of protecting biological women in education"); and

WHEREAS. on January 20, 2025, President Donald J. Trump issued Executive Order 14168, "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government"; and

WHEREAS. Executive Order 14168 states: "[i]t is the policy of the United States to recognize two sexes, male and female"; " 'Sex' shall refer to an individual's immutable biological classification as either male or female"; and " 'Sex' is not a synonym for and does not include the concept of 'gender identity.'"; and

WHEREAS, Executive Order 14168 states that "[f]ederal funds shall not be used to promote gender ideology" and "each agency shall assess grant conditions and grantee preferences and ensure grant funds do not promote gender ideology."; and

WHEREAS, Executive Order 14168 stated that the prior Administration's Title IX position regarding the Supreme Court's decision in *Bostock v. Clayton County* (2020) "is legally untenable and has harmed women"; and

WHEREAS, Executive Order 14168 further directed the Attorney General to "immediately issue guidance to agencies to correct the misapplication of the Supreme Court's decision in *Bostock v. Clayton County* (2020) to sex-based distinctions in agency activities" and "issue guidance and assist agencies in protecting sex-based distinctions, which are explicitly permitted under Constitutional and statutory precedent."; and

WHEREAS, the Board recognizes its duties, obligations, and responsibilities to uphold

federal law and to safeguard the privacy, dignity, and safety of its students; and

WHEREAS, the Board recognizes that noncompliance with federal law, and in particular Title IX, may result in statutory liability, the loss of federal funding, and other federal enforcement action: and

WHEREAS, the District will continue to provide reasonable accommodations, including access to gender-neutral facilities, to ensure that all students' needs are respectfully addressed; and

NOW, THEREFORE, BE IT RESOLVED that the policy of the Massapequa Board of Education mandates that all students shall be required to use facilities-including restrooms and locker rooms-that correspond with the students' sex as defined under Title IX and federal law.

BE IT FURTHER RESOLVED that any student who requests an alternative arrangement shall be provided access to a designated gender-neutral facility, but shall not be permitted to use facilities designated for the opposite sex; and

BE IT FURTHER RESOLVED that the Superintendent of Schools is hereby directed to revise district policies, procedures, and communications to reflect full compliance with Title IX and federal law; to provide appropriate staff training; and to ensure transparency in how the policy will be implemented and enforced

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Addendum Item - Declaratory Action Resolution

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :

RESOLVED, that the Board of Education hereby authorizes its special counsel, Nicholas Rigano and Holtzman Vogel, to commence litigation in Federal and/or State court for declaratory relief regarding potential Federal civil rights actions.

**Correspondence**

I Correspondence

Correspondence was received from Mr. Dan, Michelle Santoro and Joseph Cangeleri.

**Advocacy Liaison Updates**

I Advocacy Liaison Update - Mrs. Ocuto

Trustee Danielle Ocuto shared her advocacy highlights, which included attending a virtual event focused on advocating federal education priorities, specifically those from the New York State School Boards Association. Key topics included:

- Universal school meals
- Increasing the SALT deduction cap
- Title funding increases.
- Opposing cuts to IDEA funding.
- Addressing the mental health crisis in schools.

She shared that the session was cut short to 25 minutes instead of the planned hour and that she will attend another advocacy event which is scheduled for Friday with NYS Senator Charles Schumer.

**Updates from the Board of Education**

1 Update from the Board of Education

Board President Kerry Wachter shared her experience attending an event at the High School that took place on the first and second day of school, that featured a speaker who discussed the dangers of cell phone misuse, especially in group chats and social media. She appreciated how the speaker emphasized how digital behavior can impact college and job opportunities and she found the night was meaningful and well-received, with a strong message for students.

The Board also talked about their experiences with the newly minted playgrounds. The new playgrounds were highly praised by Vice President Jeanine Caramore for including cognitive, fine motor, and gross motor activities as well as musical elements and imaginative play structures. She further shared that community members were impressed by the amount of work and progress made.

It was noted that the back-to-school transition was going well. The Board asked Mr. Ruf about how the Free lunch program was going. He mentioned the data showed a small uptick in participation but not as much as hoped, especially at high school. Danielle Ocuto offered that possible reasons for this were the high school cafeteria location and student habits.

Kerry Wachter opened the meeting for public comment period. There were no individuals who wished to make public comments.

**Motion to enter Executive Session**

On a motion by Mrs. Caramore and seconded by Mrs. Lepre the meeting moved to Executive Session at 8:45 p.m. to discuss personnel issues. The meeting was reconvened at 9 p.m. and on a motion by Mrs. Caramore and seconded by Mrs. Lepre the meeting adjourned at 9:45 p.m.

Exhibit D

Massapequa Public Schools
Massapequa, NY

Board of Education

July 2, 2025
7:00 PM

**Call to Order**

Present:

| Attendee Name | Title | Status | Arrived |
|---|---|---|---|
| Kerry Wachter | President | Present | |
| Jeanine Caramore | Vice President | Present | |
| Cher Lepre | Secretary | Present | |
| Christopher Brooks | Trustee | Present | |
| Danielle Ocuto | Trustee | Present | |
| William Brennan | Superintendent of Schools | Present | |
| Robert Schilling | Assistant Superintendent | Present | |
| Jordan McCaw | Asst. Superintendent | Present | |
| Ryan Ruf | Assistant Superintendent | Present | |
| Brian J. Trapani | Assistant Superintendent | Present | |
| Bryan R. Piotrowski | Assistant to the Superintendent | Present | |
| Michelle Walsh | Assistant to the Superintendent | Present | |
| Anne Marie Bellizzi | Interim District Clerk | Present | |
| Margaret Goodman | School Attorney | Present | |
| Greg Gillen | School Attorney | Absent | |
| Pamela Alvarado | District Clerk | Present | |
| Yvonne Knott | Assistant Superintendent | Present | |

**Oath of Office- Newly Elected Board Members**

Mrs. Bellizzi called the meeting to order. She stated that Christopher Brooks was elected to the Board of Education. School Attorney Margaret Goodman administered the oath of office to Mrs. Wachter.

**Election of Officers of the Board for 2025-2026**

Mrs. Bellizzi asked for nominations for Board President. Mrs. Caramore nominated Mrs. Wachter. The nomination was seconded by Mrs. Lepre and unanimously carried. There were no other nominations for President. Mrs. Wachter accepted the nomination and assumed the chair.

Mrs. Wachter asked for nominations for Vice President. Mrs. Lepre nominated Mrs. Caramore, the nomination was seconded by Mr. Brooks and unanimously carried.

Mrs. Wachter asked for nominations for Secretary. Mr. Brooks nominated Mrs. Lepre, the nomination was seconded by Mrs. Caramore and unanimously carried.

Ms. Goodman administered the Oath of Office to the President, Vice President and Secretary.

**Board of Education Officers and Superintendent of Schools Take the Oath of Office**

Ms. Goodman administered the Oath of Office to the Superintendent of Schools William Brennan as well as District Clerk Pamela Alvarado, Interim District Clerk Anne Marie Bellizzi, District Treasurer Jennifer Kolias and Deputy Treasurer Ryan Ruf.

**Resolutions**

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Resolution to Appoint District Personnel

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
RESOLVED that the Board of Education approve the appointment of the District Personnel listed below:

District Clerk Pamela Alvarado

| | |
|---|---|
| Interim District Clerk | Anne Marie Bellizzi (7/1/2025-7/21/2025) |
| Deputy District Clerk | Susan Casquarelli |
| District Treasurer | Jennifer Kolias |
| Deputy Treasurer | Ryan Ruf |

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Audit Committee

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
RESOLVED that the Board of Education appoint community residents listed to serve on its Audit Committee for the 2025-26 school year.

**Audit Committee**
Sam Astrof
Joseph Menichini
Shawna Ruiz-Leek
Matthew Walegir

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Resolution to Approve District Appointments

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
RESOLVED that the Board of Education approve the appointments listed below:

| | |
|---|---|
| Claims | MacDonald & Rand |
| Internal Auditor | Cerini & Associates |
| Attorneys for the School District | Guercio & Guercio LLP |
| Bond Counsel | Hawkins, Delafield & Wood |
| Legal Counsel | Rigano, LLC |
| External Independent Auditor | R. S. Abrams & Company |
| District Insurance Consultant | NY School Insurance Reciprocal (NYSIR) |
| Unemployment Cost Management | EWS Corp. (Provider of Equifax) |
| Workers Compensation Administrator | PMA Management Corp. |
| Appointing Officer for Civil Service | Yvonne Knott |
| Certification of Payroll | Dr. William Brennan |
| Purchasing Agent | Christine Petrullo |
| Deputy Purchasing Agent | Ryan Ruf |
| Records Management Officer | Ryan Ruf |

| | |
|---|---|
| Student Hearing Officer | Dr. Brian Trapani/Dr. Michelle Walsh |
| Plan Admin-Flexible Spending Accounts | Ryan Ruf |
| Residency Hearing Officer | Ryan Ruf |
| District Architects | H2M Group |
| Public Information | Syntax |
| Title IX Compliance Officer | Yvonne Knott /Dr. M. Walsh/Dr. B. Trapani |
| Title VII Compliance Officer | Yvonne Knott /Dr. M. Walsh/Dr. B. Trapani |
| 504 Compliance Officer | Danielle Helfand/Dr. Jordan McCaw |
| Asbestos Compliance Officer | Timothy O'Donnell |
| Liaison for Homeless Students | Dr. Jordan McCaw |
| Liaison to the Courts for Youth | Dr. Jordan McCaw |
| Systems Administrator | Bryan Piotrowski |
| Data Protection Officer | Bryan Piotrowski |
| Chief Emergency Officer | Dr. William Brennan |
| Fiscal Advisors | Capital Market Advisors |
| District Investigator | Covert Investigations |
| GASB Financial Statements | R.S. Abrams |
| District Security Consultant | Covert Investigations |
| Medicaid Billing Services | Nassau BOCES |
| Fire Safety Consultants | KLH Consultants |
| Affordable Care Act Compliance | Quantas Consultant Group |
| Tax Shelter Compliance | Omni Financial Group |
| State Aid Consultants | School Aid Specialists |
| Textbook Procurement & Distribution | Central Ed |
| School District Physician | Dr. Adam Carpentieri |

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: District Designations 2025-26

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :

District Designations - 2025-26

A. Depositories of District Funds

*(In accordance with General Municipal Law, Section 10, all banking institutions listed will have a maximum investment Level, not to exceed the general fund budget).*

NYCLASS
Sterling Nat'l Bank
JP Morgan Chase Bank
Bank of America
Capital One
TD Bank
Flushing Bank

B. Official Newspapers — Massapequa Herald

Nassau Observer
South Bay's Neighbor
Newsday

C. Persons to Administer Petty Cash Funds

| | | | |
|---|---|---|---|
| Dr. William Brennan | $100 | Barbara Lowell | $100 |
| Dr. Brian Trapani | $100 | Michael DeLuca | $100 |
| Dr. Jordan McCaw | $100 | Tania Willman | $100 |
| Ryan Ruf | $100 | Vincent Green | $100 |
| Stephen Aspetti | $100 | Athletic Director | $100 |
| Thomas McKillop III | $100 | Pamela Alvarado | $100 |
| Jason Esposito | $100 | Yvonne Knott | $100 |
| Dr. Kristi Gerhard | $100 | Dr. Michelle Walsh | $100 |
| Dr. Amanda Lowry | $100 | Paul Heckelman | $100 |
| Deanna Catapano | $100 | Timothy O'Donnell | $100 |
| Bryan Piotrowski | $100 | T. Willman (CCC Pgm) | $100 |
| Barbara Lowell (CCC Pgm) | $100 | J. Esposito (CCC Pgm) | $100 |
| | | Daniel Mezzafonte (SR Pgm) | $100 |

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Extra Classroom Activity Treasurers

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :

Resolved that the Board of Education approve the appointments listed below:

**Extra Classroom Activity Treasurer**
Jason Esposito (Berner)
Tania Willman (Ames)
Barbara Lowell (MHS)

**Extra Classroom Activity Asst. Treasurer**
Jackie Coleman & Paula Nelle (Berner)
Marianne Thomson (Ames)
Susan Brown & Danielle Cestra (MHS)

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Resolution to Approve Appropriation Adjustments

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
RESOLVED that the Board of Education authorizes the Superintendent of Schools to approve appropriation adjustments up to $10,000 between functional units and to approve all appropriation adjustments within functional units.

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Resolution to Approve Appointments

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
RESOLVED that the Superintendent of Schools is authorized to approve appointments of certified staff and classified staff until Board action is taken at its next meeting (with the exception of the titles of Principals and above).

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Resolution Authorize Signing Documents

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
RESOLVED that the Board President be authorized to sign documents for items approved in the 2025-26 budget with the exception of those needing Board approval.

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Resolution to Enter into Cooperative Bidding

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :

RESOLVED that the Purchasing Agent be authorized to enter into cooperative bidding and purchasing agreements in accordance with Board Policy 6710.

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Resolution to Sign Health Contracts

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
RESOLVED that the Board President, Superintendent of Schools and District Clerk be authorized to execute and sign contracts for health services between the Massapequa School District and other local districts for the 2025-26 school year.

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Resolution to Participate in Free & Reduced Meal Program

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
RESOLVED that the Board of Education adopts the policy and criteria as set forth by the Bureau of School Food Service Management for the 2025-26 State/Federal Free & Reduced Meal Program.

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Resolution to Reimburse Travel Mileage

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
RESOLVED that the Superintendent or designee be authorized to reimburse business travel mileage at the current IRS mileage reimbursement rate.

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Resolution to Authorize Signing of Checks

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
RESOLVED that the Board of Education authorize the Board President to sign checks in the absence of the School District Treasurer/Deputy District Treasurer or in the absence of all three, that the Vice President be authorized to sign checks.

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Resolution to Readopt Board Policies

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
RESOLVED that the Board of Education readopt all current Board policies.

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Resolution to Approve Staff Conferences

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
RESOLVED that the Board of Education authorizes the Superintendent or designee to approve staff conferences as allocated in the 2025-26 budget.

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Resolution to Approve Change Orders

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
RESOLVED that upon recommendation of the Architect, change orders may be approved by the Superintendent, the Business Official and the Director of Facilities (or any two of them) to the extent of $50,000 per change order and to approve the use of the contract allowance for each prime construction contract and that the change order as approved shall be submitted to the Board of Education at the next regularly scheduled meeting for approval.

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Resolution to Authorize Principal Replacements

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
RESOLVED that the following individual(s) shall be authorized to serve in the Principal's seat in the event the Principal is absent from the school district on a designated day or days.

Central Administrators
Curriculum Associates
Executive Assistants
Assistant Principals
Principals of Other Buildings
Supervisors
Directors

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: DASA Coordinators

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
RESOLVED that the following individuals shall be authorized to serve as DASA Coordinators for the 2025-26 school year:

Stephen Aspetti & Joyce Larkin - Birch Lane
Thomas McKillop III & Mary E. Velte - East Lake
Dr. Kristi Gerhard & Megan Pavlick - Fairfield
Michael DeLuca & Louisa Vecchione - Lockhart
Dr. Amanda Lowry & Mary Ann Ferraro - McKenna
Deanna Catapano & Laura Hulsaver - Unqua
Jason Esposito, Beth Mullins, Keri Wing, Robert Tucker & Kristen Meoli - Berner MS
Tania Willman & Danielle Kennedy - MHS - Ames Campus
Barbara Lowell, Michael Brzezinski, Deja Murphy, Kenneth Wing & John Musmacker-Massapequa High School
Dr. Brian Trapani- Central Administration

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Resolution to Remove Inventory

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
RESOLVED that the Assistant Superintendent for Business is authorized to remove from inventory and discard old, worn, unsafe and outdated equipment, furniture and textbooks.

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Resolution to Appoint LI Food Service Directors Assoc.

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
RESOLVED that the Board of Education appoint Long Island Food Service Directors Association Cooperative Bid Committee to represent the district's school lunch requirements for the 2025-26 school year.

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Christopher Brooks, Trustee |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Resolution to Participate in Educational Data Services Bid

On a motion by Jeanine Caramore and seconded by Christopher Brooks, the motion below was Accepted :
RESOLVED that the Board of Education participate in the Educational Data Services New York/Island Cooperative Bid Program for the 2025-26 school year as per the attached.

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Christopher Brooks, Trustee |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Resolution Regarding Clerical Employee Overtime

On a motion by Jeanine Caramore and seconded by Christopher Brooks, the motion below was Accepted :

RESOLVED that the confidential clerical employees that return to the District in the evening to record the minutes at Board of Education committee meetings be compensated at their time and a half rate.

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Christopher Brooks, Trustee |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Resolution to Approve Fees and Charges

On a motion by Jeanine Caramore and seconded by Christopher Brooks, the motion below was Accepted :
RESOLVED that the Board of Education approve the fees and charges listed for the 2025-26 school year.

| | | | |
|---|---|---|---|
| a/ | Continuing Education | Current | Suggested |
| | Teachers' Salaries | $27.00 hr. | $28.00 hr. |
| | Supervisor's Salary | $8,900.00 | $9,000.00 |
| | Supervisor's Assistant | | $28.00 hr. |

| | | | |
|---|---|---|---|
| b/ | Lunch Prices | Current | Suggested |
| | Elementary Lunch | $3.50 | $3.50 |
| | Secondary Lunch | $3.75 | $3.75 |

- Unless Federal Government offers Free Meals

| | | | |
|---|---|---|---|
| c/ | Fees - Use of School Facilities/Equip. | Current | Suggested |
| | Auditorium - MHS/BMS | $175.00 per hr.* | $175.00 per hr* |
| | Auditorium - McKenna/MHS Caf./BMS Caf. | $150.00 per hr.* | $150.00 per hr.* |
| | Cafeteria & General Purpose Room | $75.00 * | $75.00* |
| | Athletic Field - Massapequa H.S & BMS Turf | $175.00 * | $175.00* per hr. |
| | Athletic Field/Misc. Grounds | $60.00 * | $60.00* |
| | Gymnasium - MHS, Ames, BMS, McKenna | $160.00 * | $160.00 * |
| | Gymnasium-All Other | $75.00 * | $75.00* |
| | Library, Other Indoor Spaces All Schools | $75.00 * | $75.00 * |

*Additional Service Fees May Apply

| | | |
|---|---|---|
| Instrument Rental | $110.00 | $110.00 |

Miscellaneous Salaries-(Retirees may receive a higher rate as approved by the Human Resources Administrator)

A/ Pay Rates for Substitute Instructional Personnel and Other Professionals

July 2, 2025

| | Current | Suggested |
|---|---|---|
| 1/ Per Diem Salary for Substitute Teachers* (including, but not limited to "permanent" Subs, per diem substitutes for short term absences, OSS Subs, "yellow jackets", etc.) | $140.00 | $145.00 |
| 2/ Per Diem Salary for Substitute Teachers* who replace the same teacher for 1-40 consecutive school days. | $140.00 | $145.00 |
| 3/ Retiree rate (20 or more days in same assignment) | $160.00 | $170.00 |
| 4/ Per Diem Substitute Teachers* who replace the same Teacher for 41 or more days in the same position | $160.00 | $165.00 |
| Salary for Substitute Teacher Assistant | $110.00 | $115.00 |
| Psychologist Special Assignment | $400.00 | $400.00 per day |
| Psychological Evals. & CSE Meetings | $500.00 | $500.00 per case |
| Supplemental Special Education Evaluation | $175.00 | $175.00 |
| Teacher Summer CSE | $ 50.00 per hr. | $50.00 per hr. |
| Speech Evaluation | $175.00 | $175.00 |
| Supplemental Education Evaluation | $175.00 | $175.00 |
| AP Proctoring | $130.00 per ex. | $130.00 per ex. |

*Teacher includes Guidance Counselors, Psychologists, Speech Pathologists, Social Workers and other applicable professionals.

<u>Other</u>

| Position: | Current | Suggested |
|---|---|---|
| District Clerk Stipend | $16,000.00 | $20,000.00 |
| Videographer | $185.00 ssn. | $185.00 ssn |
| Audio Visual Coordinator | $7,700.00 | $7,700.00 |
| AV Aide | $22.00/hr. | $23.00/hr. |

| | | |
|---|---|---|
| Lead Secretary Stipend | $2,500.00 | $2,500.00 |
| AP Capstone Coordinator | $3,000.00 | $3,000.00 |
| | Current | Suggested |
| Seasonal Help | Min. Wage | Min. Wage |
| Seasonal Laborer | Min. Wage | Min. Wage |
| Part Time Clerical | $20.00/hr. | $20.00/hr. |
| Part Time Clerical - Retiree | $21.00/hr. | $21.00/hr. |
| Part Time Nurse | $30.00/hr. | $32.00/hr. |
| Substitute School Nurse | $170.00/day | $170.00/day |
| Summer Nurse | $52.00/hr. | $52.00/hr. |
| Summer Lead Nurse | $60/day+hourly | $60/day+hourly |
| Web/APP Liaison | $2,500.00 | $2,500.00 |
| Web/APP Master | $3,900.00 | $3,900.00 |
| Chemical Safety Officer | $3,172.00 | $3,172.00 |
| Substitute Food Service Helpers | Min. Wage | Min. Wage |
| Substitute Cafeteria and School Aides | Min. Wage | Min. Wage |
| Home Instruction | $56.00/hr. | $56.00/hr. |
| Detention/Study Hall Supervision | $37.25 | $37.25/session |
| East/ AST Teachers/Academic Coaching (40 min. session) | $45.50 | $45.50/session |
| Regents Prep Classes | $56.00/hr. | $56.00/hr. |
| Alternate Evening HS Teachers/Credit Recovery | $56.00/hr. | $56.00/hr. |
| College Essay Workshop Facilitator | $56.00/hr. | $56.00/hr. |

| | | |
|---|---|---|
| Curriculum Writing | $56.00/hr. | $56.00/hr. |
| Instructional Workshop Teacher | $56.00/hr. | $56.00/hr. |
| Special Education Training/Workshops | $56.00/hr. | $56.00/hr. |
| Vote Registrars | Min. Wage | Min. Wage |
| Building Chairpeople-Voter Registration | Min. Wage + $2.50 per hr. | Min. Wage + $2.50 per hr. |
| School Security Guard | $27.00/hr. + 2 sick/personal | $27.75/hr. + 2 sick/personal |
| Notary Stipend | $300.00 yearly | $300.00 yearly |

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Christopher Brooks, Trustee |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Resolution Designation of Surrogate Parent

On a motion by Jeanine Caramore and seconded by Christopher Brooks, the motion below was Accepted :
RESOLVED that the individual below is designated as a surrogate parent to be utilized in the event of a student with disability who is in need of such surrogate parent service during the 2025-26 school year:

Bonnie Goess

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Christopher Brooks, Trustee |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Resolution to Appoint Committee on Special Education

On a motion by Jeanine Caramore and seconded by Christopher Brooks, the motion below was Accepted :
RESOLVED that the Board of Education appoints the following individuals to the Committee on Special Education for the 2025-26 school year, as per Commissioners Regulations, Part 200:

CSE
Dr. Jordan McCaw, Assistant Superintendent/CSE Chairperson

July 2, 2025

Kristen Catalano, CSE Chairperson
Ken Petersen, Supervisor/CSE Chairperson
Dr. Marian Zedalis, Supervisor/CSE Chairperson
Danielle Helfand, Executive Assistant/CSE Chairperson
Amanda Lenoci, Supervisor/CSE Chairperson
Stefanie DelGiorno, Supervisor/CSE Chairperson
Michelle Provenzano, CSE Chairperson
Caitlyn Krauszer, Supervisor/CSE Chairperson
Adam Carpentieri, D.O. - Chief School Physician
All District Psychologists, Alternate Chairpeople
General Education Teachers
Parent of the Student
Students with Disability (if appropriate)
Special Education Teachers

Parent Members
Tara Greene
Megan Kelly
Maria Fusco

District Committee on Preschool Special Education (CPSE)
Dr. Jordan McCaw, Assistant Superintendent/Alternate Chairperson
Kristen Catalano, CPSE Chairperson
Ken Petersen, Alternate Chairperson
Dr. Marian Zedalis, Alternate Chairperson
Danielle Helfand, Alternate Chairperson
Amanda Lenoci, Alternate Chairperson
Stefanie DelGiorno, Alternate Chairperson
Michelle Provenzano, Alternate Chairperson
Caitlyn Krauszer, Alternate Chairperson
All District Psychologists, Alternate Chairpeople
Parent Member

Sub-committee on Special Education

The individuals below are appointed to the subcommittee on Special Education for the 2025-26 school year as per Commissioner's Regulations, Part 200. Each sub-committee will be composed of the following:

CSE Chairperson
Student's General and Special Education teachers
Special Education service providers, as appropriate Psychologist (as needed)
Parent of the Student
Student with disability (if appropriate)
Special Education Teachers

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Christopher Brooks, Trustee |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Standard Work Days for Elected and Appointed Officials

On a motion by Jeanine Caramore and seconded by Christopher Brooks, the motion below was Accepted :
RESOLVED that the Massapequa Union Free School District hereby establishes the following as standard work days for elected and appointed officials and will report the following days worked to the New York State and Local Employees' Retirement System based on the record of activities maintained and submitted by the officials to the clerk of this body as per the attached.

| | |
|---|---|
| **RESULT:** | **ACCEPTED [UNANIMOUS]** |
| **MOVER:** | Jeanine Caramore, Vice President |
| **SECONDER:** | Cher Lepre, Secretary |
| **AYES:** | Wachter, Caramore, Lepre, Brooks, Ocuto |

Re: Resolution to Adopt 2025-26 Board Meeting Calendar

On a motion by Jeanine Caramore and seconded by Cher Lepre, the motion below was Accepted :
RESOLVED that the Board of Education adopt the 2025-26 Board meeting calendar as per the attached.